**Timothy Paul TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58871.**

Court of Criminal Appeals of Texas, Panel No. 3.

June 18, 1980.

Michael D. Byck, Lawrence B. Mitchell, Dallas, for appellant.

Henry M. Wade, Dist. Atty., John Tatum, Dan C. Guthrie, Jr., and Braden W. Sparks, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appeal follows conviction for the offense of aggravated robbery wherein the jury assessed punishment at confinement for life in the Texas Department of Corrections.

In the propositions presented, appellant contends that the trial court's charge to the jury during the offense phase of the trial was fundamentally defective and that the trial court lacked "jurisdiction" over this cause in that the retired trial judge was over the age of seventy years at the time of trial. We overrule these contentions, taking up first the threshold issue of "jurisdiction."

Specifically, argues appellant, Article 200a, § 5a, V.A.C.S. prohibits the assignment of retired judges of more than seventy years of age, and the trial judge's appointment in this cause ran afoul of this statutory prohibition. We pause only to note that an identical claim was raised in *Jackson v. State*, 567 S.W.2d 222 (Tex.Cr. App.1978) and rejected, this Court's holding that the age limitation of Article 200a, supra, does not apply to retired or "regular" district judges, only to "former" district judges. Compare Tex.Atty.Gen.Op. No. H–1021 (1977). The presiding judge in this cause is shown to be a retired distric⁺ judge who was requested, pursuant to administrative assignment, to hear this case. *Jackson v. State*, supra, is equally applicable to the facts of this case, just as it was in *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980). Appellant's contention is overruled.

Succinctly stated for purposes of background, the evidence tended to show that on August 8, 1977, appellant and two young women entered the Chapter XI clothing store in Dallas shortly before closing time. The trio looked around the store and left,

only to return a few minutes later. Mary Russell, the complainant and a salesperson at the store, testified that appellant grabbed her from behind, placed a knife to her throat and, after threatening her with death, demanded the money in her register. The complainant complied and while appellant was gathering up the cash from the register, his companions removed leather garments from the clothes racks. After placing the complainant in a closet, the trio fled; appellant was subsequently apprehended by Dallas police. Appellant did not call any witnesses nor present any evidence in his behalf.

█ By what is not even called a ground of error, appellant presents an argument under a heading: "The Charge is Fundamentally Erroneous."[1] Claiming a *Robinson*-type error,[2] appellant contends the charge of the trial court authorized the jury to find him guilty for conduct "not contained in the penal statute nor alleged in the indictment." To address and resolve the contention we first reproduce pertinent portions of the indictment and charge that cause appellant to complain, then show how germane statutory provisions were developed and, finally, demonstrate that fundamental error does not attach to the semantic discrepancy between charge and indictment.

Omitting formal and irrelevant parts, the indictment charged that appellant

". . . then and there while in the course of committing theft and with intent to *obtain and maintain*[3] control of the property of [named complainant] . . . did then and there by using and exhibiting a deadly weapon, to-wit: a knife, intentionally and knowingly

threaten and place the said complainant in fear of imminent bodily injury . ."

In that part of the charge applying the law to the facts[4] the trial court authorized the jury to convict appellant of aggravated robbery if it believed from the evidence beyond a reasonable doubt that appellant

". . . then and there while in the course of committing theft and with intent *to appropriate* the property of [named complainant] . . . did then and there, by using and exhibiting a deadly weapon, to-wit: a knife, intentionally or knowingly threaten or place [named complainant] in fear of imminent bodily injury . . ."

Thus, specifically appellant asserts:

"In using the word 'appropriate' rather than the phrase 'obtain or maintain control' the trial court authorized the jury to find Appellant guilty for conduct not contained in the penal statute nor alleged in the indictment. Such a charge is fundamentally erroneous."

As already presaged, however, we do not agree.

Resourceful counsel for appellant has found and seeks to take advantage of what appears at first blush to be another legislative embarrassment in making "second thought" amendments to provisions of the new penal code. In more detail than he presents them we now explain how the germane provisions were developed.

As originally enacted, and not yet amended, V.T.C.A. Penal Code, § 29.02(a)(2) provides in pertinent part:

"(a) A person commits an offense if, in the course of committing theft *as defined in Chapter 31* of this code and with intent

---

1. Appellate counsel would be well advised to heed provisions of Article 40.09, § 9, V.A.C. C.P., in framing the statement of a ground of error rather than anticipate that the Court will "identify and understand such point of objection," *id.* In this instance we can and do and, perceiving some benefit in the undertaking for the Legislature and the bench and bar, will review the matter at issue to that end.

2. *Robinson v. State,* 553 S.W.2d 371 (Tex.Cr. App.1977) is but one of several kinds of fundamental error that a faulty charge to the jury

may create; see *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979); cf. *Sattiewhite v. State,* 600 S.W.2d 277 (Tex.Cr.App.1980).

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. Other relevant instructions and definitions contained in the charge will be pointed out presently.

*to obtain or maintain control* of the property, he:

(1) * * *

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury . . ."

Robbery, as thus denounced, becomes aggravated when in committing the offense the actor uses or exhibits a deadly weapon, *id.*, 29.03(a)(2).

As originally enacted, but later amended,[5] V.T.C.A. Penal Code, § 31.03(a) defined theft, as pertinent here:

"(a) A person commits an offense if, with intent to deprive the owner of property:

(1) he *obtains* the property unlawfully; or[6]

(2) he *exercises control* over the property, *other than real property*, unlawfully."

Two years after the new penal code was adopted the Legislature made a medley of amendments to it by Acts 1975, 64th Leg., ch. 342, p. 914. In Chapter 31, use of "obtain" to implement the concept discussed in note 6, *ante*, was abandoned, and in its place in V.T.C.A. Penal Code, § 31.01(5), was substituted the verb "appropriate" with the following definition:

"(5) 'Appropriate' means:

(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or

(B) *to acquire* or otherwise exercise control over property other than real property."

Concomitantly, that part of *id.*, § 31.03 which we are here concerned was changed to read:

"(a) A person commits an offense if he unlawfully *appropriates* property with intent to deprive the owner of property."

And subsection (b) prescribed when "appropriation" of, rather than "obtaining and exercising control" over, property is unlawful in much the same terms as the original provisions.

These 1975 developments in Chapter 31, supra, have previously been noticed by one panel or another in various contexts,[7] but we are unable to find that the Court En Banc has addressed the particular question our appellant raises. As the 1975 amendments to theft proscriptions in Chapter 31 may relate to robbery and aggravated robbery, then, this is a case of first impression.[8]

The precise question presented is whether in an aggravated robbery case fundamental error attends a charge of the court to the jury applying the law to the facts which omits the specific intent element of robbery alleged in the indictment—"with intent to obtain and maintain control of the property"—but, instead, states it as "with intent to appropriate the property." When, as here, the charge elsewhere instructs the

---

**5.** Current provisions are laid out and discussed *post.*

**6.** As an aside, we note that when used in Chapter 31 as initially enacted "obtain" had an especially discrete meaning, viz: ". . . to bring about a transfer or purported transfer of a *nonpossessory* interest in property, whether to the actor or another," V.T.C.A. Penal Code, § 31.01(5). As the Practice Commentary following V.T.C.A. Penal Code, 31.03 explains, thus defined, "obtain" was directed at transactions in any legal interest in property that is nonpossessory usually title, whereas "exercising control" attached to "those thefts that involve only possession." Now, as noted in the text *post*, "obtain" is no longer specially defined.

**7.** Among others, burglary of a building with intent to commit theft, *Rider v. State*, 567

S.W.2d 192 (Tex.Cr.App.1978); theft, *Jackson v. State*, 571 S.W.2d 1 (Tex.Cr.App.1978); aggravated robbery, *Thomas v. State* (Tex. Cr.App., No. 58,234, delivered November 21, 1979) but pending on State's Motion for Leave to File a Motion for Rehearing.

**8.** There is in the panel opinion deciding *Hill v. State*, 568 S.W.2d 338 (Tex.Cr.App.1978), a robbery case, this broad remark: "The words '. . . and with the intent to obtain or maintain control of the property . . .' have the same meaning as those already used in defining theft in Chapter 31." Whether the offense in *Hill* was committed before the 1975 amendments to Chapter 31 became effective is not clear but, in any event, "obtain" has been withdrawn from Chapter 31.

jury that "appropriate" means "to acquire or otherwise exercise control over property other than real property," we find that such a charge is not fatally defective.

The thesis put to us by appellant is that "appropriate," now a technical term since it is specially defined by the Legislature, is broader in scope than the undefined phrase "obtain or maintain control." [9] Because the Legislature made no changes in the robbery provisions, he reasons, it "obviously intended that the elements of the offense of robbery remain the same while it broadened the elements of the offense of theft." While his reasoning may be unassailable, it does not produce the conclusion appellant would have us reach.

For its part, the State points to the Practice Commentary, see note 6, *ante*, and asserts that its lesson is "opposite to Appellant's argument." Moreover, as the State comprehends them, "obtain or maintain control" is so "substantially similar in meaning" to "appropriate" that the instant charge is not fundamentally erroneous.

Neither antagonist remarks about the respective functions of the terms. In the case of robbery "obtain or maintain control of property" is a matter of specific intent; in theft "appropriate" is an element of conduct—the specific intent being "to deprive the owner of property." Nor do they deem it significant that "obtain" is no longer used in the theft statutes and has ceased to be a specially defined term; it is, so to speak, back in the public domain of common usage, and we are instructed by the Code Construction Act to construe it accordingly.[10] In these circumstances the problem is not what "appropriate," as conduct, means as used in Chapter 31, but whether it and an accompanying definition, as intent, may properly serve as substitute for "obtain or maintain" in the charge of the court. We are perfectly satisfied that, as a matter of discerning intent with which an act is done, "to acquire or otherwise exercise control over property" is so similar to "obtain or maintain control of property," given the ordinary meaning of the essential words in both phrases, that there is no significant difference in meaning.[11]

Accordingly, that the errant "appropriate" found its way into several places in the charge of the court does not bring the charge within any of the forbidden classifications of fundamental error collected in *Cumbie v. State*, supra. Error, whatever its lesser degree,[12] is not fatal to the verdict of the jury and the resultant judgment and sentence. The contrary contention advanced by appellant is rejected.

The judgment is affirmed.

---

**9.** As he comprehends them, "[a]ppropriate means to acquire (synonymous with the phrase obtain or maintain control) or otherwise exercise control over property," so that it embraces a "multitude of factual circumstances" that would not be reached by "the more narrow term" in the robbery formulation.

**10.** Article 5429b–2, Section 2.01, V.A.C.S.

**11.** "Appropriate" generally is "[t]o make a thing one's own; to make a thing the subject of property; to exercise dominion over an object to the extent, and for the purpose of making it subserve one's own proper use of pleasure," Black's Law Dictionary (Rev. Fourth Ed.) 131. With nuances noticeable only by the most discriminating, "acquire" and "obtain" are slightly less comprehensive than "get" in the sense of gain possession just as "exercise control" and "maintain" are of "keep" when indicating to hold possession. See Funk & Wagnalls Standard Handbook of Synonyms, Funk & Wagnalls, New York (1947) and any standard dictionary.

**12.** Strictly speaking, the abstract statement in the charge that a person commits the offense of robbery if in the course of committing theft "and with intent to *appropriate property* . ." is incorrect because Section 29.02, supra, prescribes the requisite intent as "to obtain and maintain control" of property. Therefore, again being precise, in a robbery case "appropriate" should neither be defined nor used in applying the law to the facts for the same reason. As was recently urged in *Hawkins v. State*, 579 S.W.2d 923, 925 (Tex.Cr.App.1979), "Error in applying the law to the facts can be avoided by scrupulous attention to the allegations in the indictment" to ensure, as here, that the charge is faithful to them.