Willie Garcia ESCOBAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–00462–CR.

Court of Appeals of Texas,
Dallas.

March 22, 1989.

John H. Hagler, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before BAKER, BURNETT and WHITTINGTON, JJ.

ON REMAND FROM THE COURT OF CRIMINAL APPEALS ON MOTION FOR REHEARING

BURNETT, Justice.

We grant the State's motion for rehearing, withdraw our earlier opinion, and affirm the judgment of the trial court.

A jury convicted appellant, Willie Garcia Escobar, of aggravated robbery and sentenced him to life imprisonment. On appeal, appellant argued that the jury instruction on parole law mandated by article 37.-07, section 4, of the Texas Code of Criminal Procedure was unconstitutional. Relying on *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1986), *aff'd*, 752 S.W.2d 529 (Tex. Crim.App.1988), this Court held that the jury instruction on parole law did not violate the constitution. The Court of Criminal Appeals of Texas held that the jury instruction on parole law was unconstitutional, *Rose v. State*, 752 S.W.2d 529 (Tex. Crim.App.1988), and remanded appellant's action to this Court to conduct a harm analysis under rule 81(b)(2) of the Texas Rules of Appellate Procedure. *See Rose*, 752 S.W.2d at 554; *Haynie v. State*, 751 S.W.2d 878, 879 (Tex.Crim.App.1988).

Rule 81(b)(2) provides: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX.R.APP.P. 81(b)(2). This standard requires a court to review the entire record.

Appellant entered a Stop 'N Go convenience store around 3:05 a.m. on January 6, 1986, and hurriedly purchased some cigarettes and a small cup of coffee. After leaving, appellant returned a few minutes later and pulled out a single-barreled, sawed-off shotgun from underneath his coat. Appellant robbed complainant, the attendant at the Stop 'N Go. Photographs taken during the robbery revealed that appellant wore a large smile as he held the shotgun on complainant and as he committed the robbery. The jury found appellant guilty of aggravated robbery.

During the punishment phase, the State introduced evidence that appellant was found guilty of robbery with firearms in 1972, which was reduced to the felony offense of assault with attempt to rob; appellant received five years' probation. The State also introduced evidence that in 1973 a jury found appellant guilty of aggravated robbery and sentenced him to sixty years' imprisonment.

The State made a brief opening argument on punishment during which it requested a life sentence. The prosecutor stated:

A jury, in 1973, gave [appellant] a 60 year sentence for the very same thing, for robbery. It is all reflected in there in the court records. Now, 13 years later, here he is back again up to his old tricks. For heaven's sakes, folks, give this man a life sentence and never look back.

In response, counsel for appellant asked the jury to give appellant a light sentence, because appellant did not hurt anyone and because complainant was not traumatized by the incident. Counsel asked the jury not to sentence appellant to life imprisonment, because that meant appellant would have to serve a minimum of twenty years.

Counsel also told the jury that because of the nature of this trial, appellant would not be entitled to good conduct time; consequently, appellant would have to serve a third of whatever sentence the jury gave him—twenty years if the sentence were sixty years, and ten years if the sentence were thirty years.

During the State's closing argument on punishment, the prosecutor again urged the jury to give appellant a life sentence. The prosecutor emphasized the fact that the crime was premeditated and that appellant used a sawed-off shotgun and "not just a regular old gun." The prosecutor accentuated the fact that appellant had been twice convicted for felonies involving guns, that a jury had previously given appellant a sixty-year sentence, and "that that did a lot of good because 13 years later he is back here in Dallas County and does the same thing again." The prosecutor further said:

> [This photograph of the robbery] shows you a real good indication of what [appellant] is like when he is out in his element. Look at the smile on that man's face. Not only is he a robber ... he is a man who obviously likes his job. That is what you are punishing him for, someone who has the state of mind that would go in and take what he wants by using a sawed-off shotgun.

Finally, the prosecutor argued:

> I am asking you for a life sentence ... to do two important things. The first thing you would do would be giving the people down at TDC the maximum time to try to rehabilitate him. You know that the 60 years was a joke. He got 60 years and 12 [sic] years later he is back out on the street.
>
> The second thing and the most important thing you would be doing would be to give us, the law-abiding citizens of Dallas County, the maximum grace period away from [appellant], and that is what it is all about.

The charge on punishment contained the following instruction:

> You are not to discuss among yourselves how long the accused will be required to serve the sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are, consequently, no concern of yours.

This is the identical mitigating instruction found in *Rose*, with the exception that the *Rose* instruction contained the following introductory clause: "You are further instructed that in determining the punishment in this case,...." *Rose*, 752 S.W.2d at 554. Additionally, unlike in *Rose*, appellant's mitigating instruction appeared *before* the unconstitutional parole law instruction instead of after it.

After the jury retired to deliberate, the jury sent two notes to the trial court. The first note read, "If a man is given a life term, is he eligible for parole?" The court responded, "You are instructed that our laws do not permit the court to answer your question." The second note read, "We need clarification of the parole law (see [paragraph] 7 of the charge). It is our understanding that life imprisonment is eligible for parole in 20 years. Is this correct?" The court answered, "Please read carefully the last paragraph on both pages 1 and 2 of the court's charge on punishment." The last paragraph on page one is the mitigating instruction found in *Rose*, and the last paragraph on page two reads:

> You may consider the existence of the parole law and good-conduct time; however, you are not to consider the extent to which good-conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The jury sentenced appellant to life imprisonment, the maximum prison sentence.

The only factors that militate in favor of harm are counsels' arguments on punishment and the jury notes on parole. Neither factor creates harm in the present case.

Regarding the jury arguments on punishment, the State said during its opening argument that a jury sentenced appellant to sixty years' imprisonment in 1973 and

that thirteen years later appellant committed another armed robbery. Because the evidence showed that appellant received a sixty-year sentence for armed robbery in 1973 and that appellant committed another armed robbery in 1986, thirteen years later, the prosecutor's argument was a reasonable deduction from the evidence admitted before the jury. *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App.1980).

 It was during defense counsel's arguments on punishment that the topic of the parole law was first broached. Defense counsel, not the State, explained explicitly how the parole law worked. Accordingly, defense counsel invited the jury to apply the parole law. A defendant may not create reversible error by his own manipulations. *Beasley v. State*, 634 S.W.2d 320, 321 (Tex.Crim.App.1982). This rule applies regardless of whether the error is fundamental. *Smith v. State*, 635 S.W.2d 591, 592–93 (Tex.App.—Dallas 1982, no pet.). To the extent the prosecutor discussed or commented on the parole law during his closing arguments on punishment, his statements were in response to opposing counsel's arguments and were, therefore, proper. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App.1987) (en banc).

 Regarding the jury notes, the court's last response directed the jury to the mitigating instruction found in *Rose*. The mitigating instruction expressly told the jury that the parole law was "no concern of yours." This was the trial judge's last word on the subject. *Rose*, 752 S.W.2d at 554. The jury is presumed to follow the instructions given by the trial judge. *Rose*, 752 S.W.2d at 554. The fact that the jury assessed a life sentence does not rebut that presumption, given the evidence and appellant's previous criminal convictions for the identical offense.

For the reasons given below, we hold that beyond a reasonable doubt, the submission of the parole law instruction did not contribute to appellant's punishment. Appellant had two prior convictions for armed robbery, one of which carried a sixty-year sentence; this militates in favor of a sentence in excess, perhaps well in excess, of sixty years for the third offense. The photographs of appellant taken during the robbery depict appellant wearing a large smile as he held a sawed-off shotgun on a defenseless teenager at 3 o'clock in the morning. Given the evidence and appellant's prior criminal record for the identical crime, we determine beyond a reasonable doubt that the parole law instruction did not contribute to appellant's conviction or punishment.

The judgment of the trial court is affirmed.