Ronnie Joe JOHNSTON, Appellant,

v.

The STATE of Texas, State.

No. 2–94–430–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 22, 1996.

---

7. *Jacobs v. State*, 787 S.W.2d 397, 401 (Tex.Crim. App.), *cert. denied*, 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990).

J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Attorney, Betty Marshall and Charles Mallin, Asst. Chief Appellate Sec., David M. Curl, Steve Wells and Brad Clark, Asst. Dist. Attorneys, Fort Worth, for appellee.

Before DAUPHINOT, HOLMAN and DAY, JJ.

## OPINION

DAUPHINOT, Justice.

Appellant Ronnie Joe Johnston was charged with retaliation as a habitual criminal. The trial court found him guilty and assessed his sentence at 30 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Johnston raises two points of error, contending that: 1) the evidence was insufficient to support his conviction; and 2) the

prosecutor committed reversible error by failing to reveal the existence of an arrest warrant for the State's witness, Billy Johnston. We affirm.

Johnston challenges the sufficiency of the evidence to show that the complainant was a "prospective witness" as alleged in the indictment. Billy Joe Johnston, the complainant, is Johnston's son. On February 23, 1993, Johnston called his son, Billy, and told him that if he didn't leave him alone, he was going to make sure nobody could testify. Billy called the Arlington Police Department and subsequently spoke to Johnston's parole officer, Mr. Burris. On March 12, 1993, Johnston called Billy again. He told Billy that if he didn't quit calling the parole officer and making trouble for him, he would blow his head off. It was for this March 12th statement that Johnston was prosecuted.

Section 36.06 of the Texas Penal Code provides:

> A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:
>
> (1) in retaliation for or on account of the service of another as a public servant, witness, prospective witness, informant, or person who has reported the occurrence of a crime." [1]

■ The indictment in the case before us alleged that on March 12, 1993, Johnston threatened Billy, "in retaliation for and on account of the services of the said Billy Johnston as a prospective witness." Johnston is correct in his assertion that the allegation is not artfully phrased. In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the judgment.[2] The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[4]

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence.[5] The judgment may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt.[6]

■ In determining the sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." [7] The standard for review is the same for direct and circumstantial evidence cases.[8]

■ A rational juror could reasonably find that by reporting the February 23rd threat to the parole officer, Billy had made himself a prospective witness in a parole revocation hearing against Johnston. Indeed, defendant's exhibit one contains the substance of the March 12th, 1993 threat as set out in Officer J.E. Morgan's police report:

> The additional threat voiced to [Billy] in the second conversation on 3–12–93 by the suspect [Johnston] consisted of "I'm going to ... make you suffer...." [Billy] advised these threats were made to him by

---

1. TEX. PENAL CODE ANN. § 36.06 (Vernon 1994).

2. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

3. *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

4. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

5. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

6. *Matson,* 819 S.W.2d at 846.

7. *Id.* (quoting *Farris v. State,* 819 S.W.2d 490, 495 (Tex.Crim.App.1990)).

8. *Butler v. State,* 769 S.W.2d 234, 238 (Tex.Crim. App.1989).

... [Johnston] because he had filed a criminal report implicating [Johnston].

When Billy reported Johnston's threats, he became a prospective witness.[9] We find the evidence sufficient to support Johnston's conviction. Johnston's first point of error is overruled.

■ In his second point of error, Johnston contends the prosecutor committed reversible error by failing to reveal the existence of an arrest warrant for Billy Johnston. Complaints of a lawyer's misconduct are always quite serious. Failure to reveal *Brady*[10] material is a particular concern and one that should not be made lightly. Additionally, a prosecutor should go out of his or her way to be certain that all *Brady* material is provided to the defense at the earliest possible date. Furthermore, information possessed by an agent of the State is attributed to the prosecutor, even without any intention to engage in misconduct on the part of the prosecutor.[11]

During trial, the trial judge stated that he had been handed a note by the bailiff telling him of an active warrant for Billy Johnston. The defense moved for a mistrial, which was denied by the trial court. When questioned by defense counsel about his knowledge of the active warrant for Billy's arrest, the prosecutor testified that it was his understanding that there was no active warrant for Billy's arrest at that time. But when he was asked if had made any effort to check Billy's criminal history, the prosecutor stated: "No, I personally did not, other than speak with my investigator. I did believe that there was a warrant, from what I'd heard. This is hearsay. I don't know it to be true. I've done nothing personally to determine whether or not he had a warrant or not. But at that time I heard he had a warrant, at that time."

■ A prosecutor cannot shield himself from knowing information that would damage the credibility of his witness by claiming that the information is hearsay and that he made no effort to verify its truth or falsity. A prosecutor may not create a wall of ignorance in order to protect himself from the obligations of *Brady*.

■ Johnston is correct that a defendant is entitled to evidence that may impeach the credibility of a State's witness, and where the witness's credibility is material to a disposition of the defendant's guilt, the prosecutor's failure to disclose such impeachment evidence violates *Brady*.[12] Additionally, a witness's bias, interest, or motive to testify is a critical area of inquiry on cross-examination.[13] When the State holds the witness's liberty in its hands, a jury may find that the liberty interest creates a compelling motive to testify in the way the State desires.

In the case before us, the trial judge alerted Johnston to the existence of the warrant. Johnston made no motion for continuance and was able to use the evidence of the existing warrant in cross-examining Billy.

■ *Thomas v. State*[14] sets out a three-pronged test to be used when a *Brady* violation occurs. In order to show harm from a *Brady* violation, the following three-pronged test must be satisfied: 1) a prosecutor fails to disclose information; 2) which is favorable to the accused; and 3) that creates a probability sufficient to undermine the confidence in the outcome of the proceeding. Because, in the case before us, Johnston was able to use the existence of Billy's pending arrest warrant in cross-examining Billy, the chal-

9. *Morrow v. State*, 862 S.W.2d 612, 614 (Tex. Crim.App.1993).

10. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

11. *See Reed v. State*, 644 S.W.2d 494, 498–99 (Tex.App.—Corpus Christi 1982, pet. ref'd) ("We believe that the defense met all of the criteria of the statute by showing the use for this evidence, and its existence within the custody or control of the Victoria Police Department."); *see also*

*Means v. State*, 429 S.W.2d 490, 494 (Tex.Crim. App.1968) ("Reversible error is also committed where the prosecutor negligently or inadvertently fails to disclose evidence....").

12. *Crutcher v. State*, 481 S.W.2d 113, 115–16 (Tex.Crim.App.1972).

13. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

14. 841 S.W.2d 399, 404 (Tex.Crim.App.1992).

lenge fails to show that the prosecutor's impropriety created a probability sufficient to undermine the confidence in the outcome of the proceeding.[15]

Harm from the prosecutor's conduct was cured by the quick action of the trial judge. Johnston's second point of error is overruled. The judgment of the trial court is affirmed.

DAY, J., concurs without opinion.

---

**15.** *See Etheridge v. State*, 903 S.W.2d 1, 20 (Tex. Crim.App.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995).