TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00319-CR







Tyrone Akito Harris, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 44,875, HONORABLE JOE CARROLL, JUDGE PRESIDING







 This appeal is taken from a conviction for attempt to commit capital murder during
the course of committing or attempting to commit robbery, (1) alleged and proven to have occurred
on December 2, 1993. The jury found appellant, Tyrone Akito Harris, guilty, rejecting his not
guilty plea. The trial court assessed punishment at life imprisonment. Appellant was tried jointly
with co-defendant Dion Delon Alexander, whose conviction was this day affirmed. See Alexander
v. State, No. 03-95-00362-CR (Tex. App.--Austin Feb. 6, 1997). We will affirm the conviction.

 Appellant advances eleven points of error. Not necessarily in chronological order,
appellant complains that the prosecutor failed to inform the trial court that he would seek to admit evidence admissible only against the co-defendant Alexander, failed to disclose favorable
evidence that a confidential informer had identified a suspect other than appellant, failed to
provide a line-up from which appellant was identified, and had committed misconduct by making
improper jury argument. In addition, appellant contends that the trial court erred in admitting the
testimony of Marvin Rhynes, despite the limiting instruction given, erred in refusing to poll the
jury concerning local newspaper stories which referred to appellant's criminal history, erred in
admitting photographic evidence which had been withheld by the prosecutor acting in bad faith,
erred "in failing to suppress an impermissibly suggestive color photo line-up," erred in permitting
Donyell Frederick to testify without taking an oath, erred in denying a jury instruction as to the
accuracy of identification, and improperly cumulated appellant's sentence where the State failed
to offer evidence as to the prior conviction or sentence.



FACTS


 Appellant does not challenge the sufficiency of the evidence to sustain his
conviction. A brief summary of the facts will place the points of error in proper perspective. (2) 
The offense occurred on December 2, 1993, at D's Pawn Shop in Bell County. Lorrie Lefler,
an employee of the shop, began bringing into the building bicycles which had been on display
outside. It was about 6:45 p.m. near closing time. Lefler saw a man walking across the parking
lot whom she later identified as appellant. She also heard male voices from the side of building. 
She reported her observations to Dalton Langford, the owner of the shop, and resumed her chore. 
Langford went behind the counter and secured a loaded revolver. Three African-American males
entered the shop, one dragging Lefler who was then dropped to the floor. The men began to
shoot. One bullet grazed Langford's head, another grazed his rib, and a third bullet shattered an
elbow. Langford never fired his weapon. The intruders then fled. Langford was unable to
identify any of the men. Lefler was only able to identify appellant as the man who dragged her
into the shop. Shells collected at the scene by the police were shown to have been fired by a 9
mm pistol recovered from a car stopped by Austin police officers nine days after the offense. 
Larry President, co-defendant Alexander and appellant were in the car at the time.

 Marvin Rhynes testified that as an inmate in the Bell County jail he had
encountered the co-defendant Alexander, whom he had known for four or five years; that
Alexander told him that he (Alexander), Larry President, and another man, whose name Rhynes
could not recall, had committed the instant offense; that their purpose was to secure jewelry and
money from the pawn shop; and that after they exhausted their supply of bullets they fled. 
Alexander also told Rhynes that one of the guns used, a 9 mm pistol, had been confiscated by the
Austin police after a traffic stop, but that the police were unaware that the gun had been used in
the offense in Bell County. Nicole Broadway testified that appellant, Alexander, and Larry
President were "associates."



PROSECUTORIAL MISCONDUCT


 The first point of error contends that "[b]efore trial, the prosecutor committed
misconduct in failing to inform the trial court that it would be seeking to admit at the joint trial
evidence admissible only against co-defendant Alexander." Appellant contends that the question
is one of first impression and that he has found no caselaw squarely on point. As a general rule,
appellate courts will not consider errors, even though of constitutional dimension, not called to
the trial court's attention. State v. Nolan, 808 S.W.2d 556, 559 (Tex. App.--Austin 1991, no
pet.). To preserve error for appellate review, a party must have presented to the trial court a
timely request, objection, or motion, stating the specific grounds for the rulings he desires the
trial court to make. Tex. R. App. P. 52(a); Tex. R. Crim. Evid. 103(a). We have found no trial
objection made and ruled on which would preserve error. Nevertheless, we shall discuss the
contention.

 The point of error is difficult to follow. The thrust of appellant's argument seems
to be that before trial the prosecutor should have called to the trial court's attention the testimony
of Marvin Rhynes as to Alexander's admission that he and two others committed the instant
offense. Appellant argues that if the matter had been timely presented to the trial court, it would
have denied the State's motion to join the parties or would have later granted appellant's motion
for severance on the basis that a joint trial would be prejudicial to appellant. See Tex. Code
Crim. Proc. Ann. art. 36.09 (West 1981). Appellant does not explain why he was unable to bring
the matter to the trial court's attention or when he learned of Rhynes's testimony. He does not
claim that he requested a list of State's witnesses or that Rhynes's name was not on the list
furnished. He does not assert that the prosecutor was under legal obligation to inform him, but
argues that the prosecutor had a duty to tell the trial court.

 Appellant and Alexander were separately indicted. The State filed a motion for
joinder of the parties. Appellant and Alexander each filed motions for severance, which were
premature since there was no joinder at the time. On January 27, 1995, a hearing was conducted
on the State's motion for joinder before a judge other than the judge who presided at the trial on
the merits. The motion was taken under advisement. On February 17, 1995, another hearing on
the State's motion was conducted before a different judge. The motion was again taken under
advisement but was later granted. On March 20, 1995, just before trial, appellant "reurged" his
motion for severance before the trial judge although it had not been previously presented. No
evidence was presented and the motion for severance was overruled. After jury selection, the
prosecutor told the trial court that the State had two witnesses in jail, one of whom was Rhynes. 
When Rhynes was called to testify, appellant's counsel objected to his testimony, stating that he
understood Rhynes would testify as to what Alexander had told him (Rhynes). The record also
shows that co-defendant Alexander's counsel attempted to talk to Rhynes about his testimony some
six days before trial. After learning of Rhynes's testimony, appellant took no action, even at mid-trial, to secure relief. (3) He now accuses the prosecutor of misconduct. The first point of error is
overruled.



ADMISSION OF RHYNES'S TESTIMONY


 In point of error two, appellant claims that the trial court erred in admitting
Rhynes's testimony which was prejudicial, despite a limiting instruction. Appellant does not
direct us to any objection to the testimony that corresponds to the point of error. No error is
preserved for review. Tex. R. App. P. 52(a); Tex. R. Crim. Evid. 103(a). Appellant did object
to Rhynes's testimony on the basis of hearsay. However, the trial objection must comport with
the complaint on appeal. Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The trial
court instructed the jury orally and in writing that Rhynes's testimony was being introduced
against Alexander only and was not to be considered against appellant.

 Appellant attempts to create a multifarious point of error by also complaining of
the prosecutor's jury argument. A multifarious point of error presents nothing for review. See
Euziere v. State, 648 S.W.2d 700, 703 (Tex. Crim. App. 1983). In any event, the contention is
considered in point of error ten. The second point of error is overruled.



REQUESTED JURY POLL--NEWSPAPER ARTICLES


 The third point of error claims that the "trial court erred in refusing to poll the jury
concerning newspaper articles which detailed appellant's prior conviction." After jury selection,
the trial court admonished the jury, inter alia, not to read newspaper accounts of the case or listen
to any radio or television reports. Before the witnesses testified, the jury was reminded of these
instructions. At the end of the first day of testimony, the trial court again admonished the jurors
about reading news accounts of the trial. The next morning appellant filed his motion to have the
jury polled to determine whether any juror had read articles in the Killeen and Temple newspapers
that morning concerning appellant's prior aggravated robbery conviction in Bell County where
the punishment was assessed at 99 years. The newspaper articles were attached to the written
motion but were not offered or introduced. The trial court denied the motion.

 The determination as to whether to conduct a jury poll under the circumstances was
within the sound discretion of the trial court. Powell v. State, 898 S.W.2d 821, 828 (Tex. Crim.
App. 1994), cert. denied, 116 S. Ct. 524 (1995). The polling of the jury always runs the risk of
exposing the jury to the existence of a newspaper article and its contents for the first time. Id. 
The trial court did not abuse its discretion. Furthermore, the trial court had admonished the jury
on numerous occasions not to read newspaper articles concerning the case. Cf. Haas v. State, 498
S.W.2d 206, 211 (Tex. Crim. App. 1973) (upholding trial court's refusal to grant mistrial based
on jury's alleged exposure to newspaper article appearing during trial). The decision in Haas was
based on repeated admonishments to the jury by the trial court, similar to the ones given in the
instant case. See Powell, 898 S.W.2d at 828. We also observe that appellant never raised the
issue of jury misconduct by filing a motion for new trial. See Bell v. State, 724 S.W.2d 780, 797-80 (Tex. Crim. App. 1986). Appellant has failed to show that the jurors read the newspaper
articles and were in receipt of other evidence.

 Appellant cites Flores v. State, 472 S.W.2d 146, 148 (Tex. Crim. App. 1971),
where he claims the jury was polled. Actually the trial court in Flores simply addressed a
question to the jury asking if anyone had inadvertently seen or read any news accounts concerning
the trial. Appellant now argues that the trial court could have used the same type of inquiry in
the instant case. There is nothing to show that appellant requested this type of inquiry instead of
a poll of the jury. The third point of error is overruled.



ADMISSION OF EVIDENCE


 In point of error four, appellant contends that the "trial court abused its discretion
in admitting evidence which the prosecution willfully or in bad faith withheld from the defense." 
The evidence referred to is State's exhibits 24 and 24A, a photographic spread used for the
purpose of a line-up and the worksheet pertaining thereto. This evidence was admitted during trial
over an objection that the evidence had not been disclosed in accordance with the trial court's
discovery order.

 After informal discovery, appellant filed an amended motion for discovery. The
trial court partially granted the motion and ordered the State to produce "the results, worksheets,
and reports of physical examinations, scientific tests and laboratory tests made in connection with
the case," and all photographs of appellant in custody of the Killeen Police Department. 
Appellant had earlier been furnished a copy of a black and white photographic spread which
included appellant's picture and an artist's sketch or composite drawing prepared by the police. 
After the motion was granted, two or three more pictures of appellant from the files of the police
department were given to appellant's counsel.

 Lorrie Lefler made an in-court identification of appellant as the man she had seen
in the parking lot and who later grabbed her and forced her inside the store during the course of
the instant offense. No pretrial identification evidence was introduced by the State to support her
testimony. On cross-examination, Lefler identified the composite drawing made from her
observations, and acknowledged that she had been shown twenty to thirty photographs and had
selected appellant's picture therefrom. When she was shown the black and white photographic
spread (marked for identification as Harris-Defendant's exhibit 8), her testimony became
somewhat confused. She admitted that she had seen the photographs before but she could not
recall when she had been shown "this line-up" because she had "picked him out several times." 
She pointed out appellant's picture in the spread. When the exhibit was offered, the witness
volunteered that "they didn't show me pictures like that on there. They showed me photographs." 
The exhibit was admitted into evidence. On re-direct examination, Lefler was shown State's
exhibit 17 which was the same as the defense exhibit. She again selected appellant's picture
before State's exhibit 17 was admitted in evidence. Lefler made it clear that she had never
identified anyone but appellant.

 Officer St. John also identified appellant's picture in State's exhibit 17. When
asked if this black and white photographic spread had been shown to Lefler, St. John checked a
worksheet prepared in connection with Lefler's identification of appellant. He discovered the
numbers of the photographs on the worksheet did not correspond with the numbers on the
photographs in State's exhibit 17. The officer was allowed to leave the courtroom and return with
six colored Polaroid photographs whose numbers corresponded with the numbers on the
worksheet. He identified this photographic spread as the one shown to Lefler on January 4, 1994. 
The spread was marked State's exhibit 24 for identification and the worksheet was marked as
State's exhibit 24A. St. John pointed out that the two separate photographic spreads were
photographs of different people save for appellant.

 Out of the jury's presence, appellant objected to the introduction of State's exhibits
24 and 24A on the basis that the discovery order had been violated. Officer St. John testified that
appellant's photograph in State's exhibit 24 was not in the police files when the request for all of
appellant's pictures were made, as it apparently had been checked out for use in another
investigation. He explained the failure to disclose was not intentional and was not discovered until
he was on the witness stand. The prosecutor testified that the worksheet was in the State's
voluminous file and that if he had done a "better job studying" he would have been aware that
appellant's photograph included in State's exhibit 24 had not been made available to appellant. 
The trial court overruled appellant's objection.

 In the jury's presence, Officer St. John testified that State's exhibit 24 had been
shown to Lefler, not the other photographic spread previously introduced. State's exhibits 24 and
24A were then admitted in evidence. Lefler was recalled and confirmed that she had been shown
State's exhibit 24 and had identified appellant's photograph therein and had signed State's exhibit
24A, the worksheet.

 Independent of the constitutional right of access to exculpatory evidence, see Brady
v. Maryland, 373 U.S. 82 (1963), there is no general right under the United States Constitution
to discovery by a defendant in a criminal case of evidence in the possession of the State. State
v. Williams, 846 S.W.2d 408, 410 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd). Although
criminal defendants in Texas are entitled to limited discovery, Tex. Code Crim. Proc. Ann. art.
39.14 (West 1979), a defendant does not have a general right of discovery of evidence in the
possession of the State. Kinnamon v. State, 791 S.W.2d 84, 91 (Tex. Crim. App. 1990),
overruled on other grounds, Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). 
Decisions involving pretrial discovery of evidence which is not exculpatory, mitigating, or
privileged are within the discretion of the trial court. Id.; see also Quinones v. State, 592 S.W.2d
933, 940-41 (Tex. Crim. App.), cert. denied, 449 U.S. 893 (1980). To gain discovery, a
defendant must show good cause, materiality, and possession by the State. Williams, 846 S.W.2d
at 410.

 The question in the instant case is not whether the trial court erred in refusing
discovery, but rather whether the trial court abused its discretion in admitting evidence which the
prosecution had willfully or in bad faith withheld from the defense after the partial granting of a
motion for discovery. If the State willfully or in bad faith withholds evidence subject to disclosure
pursuant to a discovery order, that evidence is generally inadmissible if a timely objection is made
by the defendant. Cooks v. State, 844 S.W.2d 697, 734 n.31 (Tex. Crim. App. 1992), cert.
denied, 113 S. Ct. 3048 (1993); Lindley v. State, 635 S.W.2d 541, 543 (Tex. Crim. App. 1982);
Hollowell v. State, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978). The defendant must establish
that the State acted willfully or in bad faith to justify the exclusion of the evidence. See State v.
Wright, 830 S.W.2d 309, 313 (Tex. App.--Tyler 1992, no pet.). If the trial court allows the
evidence, a showing of harm must be made in order to obtain a reversal on appeal. Hollowell,
571 S.W.2d at 180. Thus, when a trial court admits evidence wrongfully withheld from
discovery, reversal is not automatic. The appellant must still show harm. Herring v. State, 752
S.W.2d 169, 172 (Tex. App.--Houston [1st Dist.]), remanded on other grounds, 758 S.W.2d 283
(Tex. Crim. App. 1988).

 In the instant case, State's exhibit 24A, the worksheet, did not fall within the scope
of the discovery order which pertained only to results, worksheets, and reports of physical
examinations, scientific and laboratory tests. The other part of the discovery order pertained to
all photographs of appellant in the police department's possession. The motion for discovery did
not request photographic spreads used for identification. However, appellant was given one
photographic spread and all of appellant's photographs save the one in the photographic spread
identified as State's exhibit 24. This oversight became apparent during Officer St. John's
testimony. He stated that the oversight was not intentional and explained why the missing
photograph was not in the police files when requested. While the prosecutor may have been
negligent in failing to detect the variance between the numbers on the individual photographs in
the black and white photographic spread earlier given to appellant and the numbers listed on the
worksheet in his file, there is no showing that the failure to disclose the remaining photograph of
appellant until trial was willful or in bad faith. Moreover, appellant has failed to demonstrate any
harm. He asserts that if he had earlier been aware of State's exhibit 24, he would have asked for
a Wade/Gilbert hearing, see Martinez v. State, 437 S.W.2d 842, 848 (Tex. Crim. App. 1969),
in order to challenge pretrial identification procedures. He does not explain why, when the matter
was raised at trial, he did not ask for a Martinez/Wade/Gilbert hearing in the absence of the jury. 
Without a request, the trial court is under no obligation to conduct such a hearing. See Crane v.
State, 786 S.W.2d 338, 348 (Tex. Crim. App. 1990). Appellant has failed to demonstrate harm
that would entitle him to the relief requested. The fourth point of error is overruled.



ADMISSION OF PHOTOGRAPHIC LINE-UP


 In the fifth point of error, appellant urges that the "trial court erred in failing to
suppress the impermissibly suggestive color photo line-up (State's exhibit 24) shown to Ms.
Lefler." The record is in somewhat of a state of confusion with regard to this contention. Some
of the assertions are not supported by the record. It is not clear whether the appellant timely and
specifically objected and obtained a ruling so as to preserve error. See Tex. R. App. P. 52(a);
Tex. R. Crim. Evid. 103(a). In the absence of the jury, a hearing was conducted to determine
if there had been a violation of the discovery order as discussed in our disposition of the fourth
point of error. During this hearing on another matter, the record reflects:



 Mr. Klemens [appellant's counsel]: Okay. Your Honor, we are going to
object to the entry of these into evidence because of the unduly prejudicial nature.


 Mr. Carroll [prosecutor]: We are not offering them, Judge.


 Mr. Klemens: Mr. Harris is much lighter in those six photographs than all
the other five people.



(Emphasis added).

 Appellant continued his statement to the court without securing a ruling on his
objection or explaining to which set of six photographs he had reference. In fact, appellant
continued to discuss the harm necessary to establish the violation of the discovery order. If
appellant had reference to State's exhibit 24, it is not possible to determine from the exhibit in this
record that appellant was "much lighter" than the others.

 To add to the confusion, the colloquy at the hearing turned to unmarked
photographs which had been shown to the witness Langford without any identification being
made. They were eventually made a part of the record only as court's exhibit 1. The trial court
then indicated, sua sponte, that it had to rule on the photographs in State's exhibit 24 "as far as
being unfairly suggestive." The prosecutor pointed out that the exhibit would not be offered until
"the appropriate time." When asked if there were other objections, appellant, without stating
grounds, asked for running objections to State's exhibit 24. The response was "okay." The court
then overruled the objection as to the violation of the discovery order about which the hearing had
been conducted.

 When State's exhibit 24 was offered in the presence of the jury, appellant simply
objected "for all reasons previously stated." If it could be argued that there was preservation of
error on the claim now advanced on appeal, we find Hicks v. State, 901 S.W.2d 614 (Tex.
App.--San Antonio 1995, pet. ref'd) instructive. There the court stated:



A two-step analysis is used to determine the admissibility of an in-court
identification. Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App.), cert.
denied, U.S. , 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). First, the photo
display must not be impermissibly suggestive. In the second step, we must look
at the totality of the circumstances to determine that the suggestive procedure must
not have given rise to a "very substantial likelihood of irreparable
misidentification." Id. Among the factors the court must consider are: (1) the
witness's opportunity to view the criminal at the time of the crime; (2) the
witness's degree of attention; (3) the accuracy of the witness's prior description of
the criminal; (4) the witness's level of certainty; and (5) the time between the crime
and the confrontation. Id. (citing Manson v. Brathwaite, 432 U.S. 98, 114, 97
S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The defendant must show by clear and
convincing evidence that the in-court identification is unreliable. Harris v. State,
827 S.W.2d 949, 959 (Tex. Crim. App.), cert. denied, U.S. , 113 S.Ct. 381,
121 L.Ed.2d 292 (1992).



Hicks, 901 S.W.2d at 619.

 As noted, it is not possible to tell from State's exhibit 24 that appellant was "much
lighter" than the others in the photographic spread. Varying height, weight, and skin color of
persons in a lineup are not unnecessarily suggestive. See Buxton v. State, 699 S.W.2d 212, 216
(Tex. Crim. App. 1985), cert. denied, 476 U.S. 1189 (1989); Hicks, 901 S.W.2d at 620; Bethune
v. State, 821 S.W.2d 222, 229 (Tex. App.--Houston [14th Dist.] 1991), aff'd, 828 S.W.2d 14
(Tex. Crim. App. 1992) (holding lineup not unduly suggestive although defendant was taller than
others, had less faded clothes, and was placed in middle). While it is better practice to use
photographs which portray persons whose every feature matches the pre-identification description,
neither due process nor common sense requires such procedure. Ward v. State, 474 S.W.2d 471,
476 (Tex. Crim. App. 1972).

 Looking at the totality of the circumstances and the factors usually considered, we
observe that the witness Lefler had a good opportunity to view the suspect at the time of the
offense. Lefler's degree of attention was good because the suspect had her around the neck part
of the time. Moreover, Lefler was positive and certain in her identification of the suspect, and
the lapse of time between the offense (December 2, 1993) and the showing of the photographic
spread to Lefler (January 4, 1994) was just over a month. We do not believe that appellant has
shown by clear and convincing proof that the in-court identification is unreliable. Appellant's fifth
point of error is overruled.



DENIAL OF A FAIR TRIAL?


 In the sixth point of error, appellant complains that the failure to provide the line-up
from which appellant was identified abrogated his constitutional right to a fundamentally fair trial. 
This appears to be a continuation of the argument that there was a violation of the discovery
order. Appellant argues that once his photograph contained in State's exhibit 24 was returned to
the police files, it should have been made available to him, as the State has a continuing burden
of disclosure once a motion for discovery has been granted. See Granviel v. State, 552 S.W.2d
107, 119 (Tex. Crim. App. 1976), cert. denied, 431 U.S. 933 (1977). State's exhibit 24 surfaced
during trial and was made available to appellant. For the reasons previously discussed, the court
did not err in admitting the exhibit. Appellant also urges a violation of due process of law, but
he lodged no objection on this basis at trial. Even constitutional errors may be waived by failure
to make a trial objection. Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). Point
of error six is overruled.



FAILURE TO DISCLOSE


 Appellant's seventh point of error contends that "the prosecutor failed to disclose
evidence that a confidential informant had identified a suspect other than appellant." Appellant
relies upon the due process clauses of the Fourteenth Amendment to the United States Constitution
and Article I, Section 19 of the Texas Constitution. (4) Appellant filed a pretrial motion to disclose
favorable evidence. After the prosecutor stated that the State had no favorable or mitigating
evidence, the trial court granted part two of the motion requesting evidence "which might tend
to prove or which is material to the innocence of the Defendant."

 Appellant asserts that when Officer St. John was called as a State's witness, defense
counsel was handed a police report. The record established that a composite drawing had been
made with the help of Lorrie Lefler who had seen the facial features of one of the intruders into
the shop during the offense. On cross-examination, appellant asked Officer St. John if he had
found a witness who could identify the person depicted in the composite drawing. After checking
his records, St. John stated that a confidential informer had advised the police of a juvenile whom
the informer believed looked like the person in the drawing. A photograph of the juvenile did
resemble the composite drawing. The police contacted the juvenile, but after an investigation no
charges were filed. Appellant elicited this testimony before the jury during the trial. There does
not appear to be a question of suppression.

 The suppression of evidence favorable to the accused violates due process where
the evidence is material to either guilt or punishment irrespective of the good or bad faith of the
prosecutor. Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady involved discovery after trial
of evidence that had been suppressed. Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App.
1992), sets out the more modern test to be used when a Brady violation occurs. In order to show
harm from a Brady violation, the following three-pronged test must be satisfied: 1) a prosecutor
fails to disclose information, 2) which is favorable to the accused, and 3) that creates a probability
sufficient to undermine the confidence in the outcome of the proceedings. Thomas, 841 S.W.2d
at 404; Johnston v. State, 917 S.W.2d 135, 138 (Tex. App.--Fort Worth 1996, pet. ref'd).

 Here, because appellant was able to bring the so-called suppressed evidence before
the jury and use it to his benefit, the challenge fails to show that the prosecutor's impropriety, if
any, created a probability sufficient to undermine the confidence in the outcome of the proceeding. 
See Etheridge v. State, 903 S.W.2d 1, 20 (Tex. Crim. App. 1994), cert. denied, 116 S. Ct. 314
(1995); Johnston, 917 S.W.2d at 138-39. Moreover, one cannot complain of suppression of
evidence by the prosecutor if, before the jury's verdict, the facts are already within the
defendant's knowledge. See Means v. State, 429 S.W.2d 490, 496 (Tex. Crim. App. 1968); see
also Smith v. State, 541 S.W.2d 831, 837 (Tex. Crim. App. 1976); Chappell v. State, 489
S.W.2d 923, 925 (Tex. Crim. App. 1972); Long v. State, 659 S.W.2d 84, 86 (Tex. App.--Houston
[14th Dist.] 1983, pet. ref'd); Allen v. State, 658 S.W.2d 642, 646-47 (Tex. App.--Amarillo 1983,
no pet.). In addition, appellant never objected that the trial court's order had been disobeyed. 
He made no showing that the matter had not been previously disclosed to him. No motion either
for continuance, mistrial, or new trial was made or filed on the basis of delayed disclosure. The
seventh point of error is overruled.




TESTIMONY WITHOUT OATH


 In the eighth point of error, appellant contends that the "trial court erred in
permitting Donyell Frederick to testify without taking an oath." See Tex. R. Crim. Evid. 603. 
This same contention was discussed at some length in the companion case of Alexander v. State,
No. 03-95-00254-CR, this day decided, and the details need not be repeated here.

 Frederick was a most reluctant witness. When called to testify before the jury as
a State's witness, he refused to take the oath. After a colloquy between the trial court and the
witness, the interrogation began. Frederick gave his name and testified that he had lived in
Killeen in the fall of 1993. There was no objection to this testimony and any error was waived. 
Beck v. State, 719 S.W.2d 205, 211-14 (Tex. Crim. App. 1986). This evidence was hardly
incriminating. Later, after "no oath" objections were made and overruled, Frederick testified that
he and Nicole Broadway had a young son and that he knew the defendants and Larry President
and that they were "associates." This evidence was merely cumulative of that given earlier by
Nicole Broadway who testified to the same facts without objection. The improper admission of
evidence is not reversible error when the same facts are proven by other unobjected-to testimony. 
Anderson v. State, 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986); Miranda v. State, 813
S.W.2d 724, 739 (Tex. App.--San Antonio 1991, pet. ref'd).

 When Frederick was asked if he had informed the Killeen Police Department or
Officer St. John that appellant and his companions had admitted that they committed the instant
offense, another "no oath" objection was lodged and the question was never answered. When the
question was repeated in one form or another, Frederick became evasive and asserted a Fifth
Amendment claim against self-incrimination. He was granted "use" immunity, then "total"
immunity, but he still refused to answer the question and was held in contempt of court. While
the jury was finally removed during the latter stages of this confusing event, and although the trial
court may have coaxed an affirmation from Frederick sufficient to meet the requirements of Rule
603, Frederick never answered the question repeatedly asked in and outside the jury's presence.

 In this regard, we observe that Officer St. John testified before the jury without
objection that he received information from Frederick that led to the discovery of the 9 mm
weapon at the Austin Police Department, and that this occurred before he was advised of Rhynes's
statement or testimony. See Miranda, 813 S.W.2d at 739.

 We conclude that any error in not timely administering an oath or affirmation to
Frederick was harmless error beyond a reasonable doubt. See Tex. R. App. P. 81(b)(2); Harris
v. State, 790 S.W.2d 568 (Tex. Crim. App. 1989). The eighth point of error is overruled.



JURY INSTRUCTION--MISIDENTIFICATION


 In the ninth point of error, appellant urges that the trial court erred in denying his
requested jury instruction as to the accuracy of identification. Appellant argues he was only
identified by Lorrie Lefler as being at the scene of the offense and that her description of the
perpetrator was at variance from his own physical characteristics. Thus, appellant claims that the
issue of misidentification was raised and he was entitled to the jury instruction requested as a
defense.


 In Roberson v. State, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993), the Court
wrote:



A defense may be recognized two ways: by the legislature, or by the courts. 
Vasquez v. State, 830 S.W.2d 948 (Tex. Cr. App. 1992). Misidentification is not
an affirmative defense; the Texas Penal Code does not provide for a statutory
defense of "mistaken identity." Furthermore, this court has held that a charge on
mistaken identity is an improper comment on the weight of the evidence and should
not be given. Coldwell v. State, 818 S.W.2d 790, 799 (Tex. Cr. App. 1991)
(citing Laws v. State, 549 S.W.2d 738 (Tex. Cr. App. 1977); Waller v. State, 581
S.W.2d 483 (Tex. Cr. App. 1979)).



The ninth point of error is overruled.



JURY ARGUMENT


 The tenth point contends that the "prosecutor committed misconduct before the jury
at closing arguments by (A) shifting the burden of proof to the defense; (B) misstating the
evidence; and (C) applying the Willis/Rhynes testimony to appellant."

 The general area of approved jury argument include (1) summation of evidence,
(2) reasonable deductions from the evidence, (3) answer to an argument of opposing counsel, and
(4) a plea for law enforcement. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995);
Coble v. State, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993); Todd v. State, 598 S.W.2d 286,
296 (Tex. Crim. App. 1980); Alejandro v. State, 493 S.W.2d 230, 231-32 (Tex. Crim. App.
1973).

 Turning first to the "shifting the burden of proof" argument, we observe that
appellant's counsel argued that the State had not called Detective Orr, "a lead investigator in the
case," as a witness or produced a photograph of a suspect who resembled the composite drawing
drafted from descriptions given by Lorrie Lefler, an eyewitness. In response to such argument,
the prosecutor answered that if Detective Orr "had something good, we would have put him on."
He added that the State did not put on evidence to waste time. He then argued: "But if they had
a hole that they could shoot in this case, they are morally obligated to call that officer and prove
it, and they didn't." The trial court sustained appellant's objection that the prosecutor was
misstating the law, instructed the jury to disregard the argument, but denied the motion for
mistrial.

 The complained-of argument was basically in response to appellant's earlier jury
argument and was proper. Todd, 598 S.W.2d at 296. The balance of the argument told the jury,
in effect, that the defense had the right to call Detective Orr as a witness if he had anything to add
to the evidence. This latter argument was not artfully worded. The error, if any, was cured by
the trial court's instruction. Bell v. State, 724 S.W.2d 780, 803 (Tex. Crim. App. 1986). It was
not such a prejudicial argument that it could not be cured by an instruction. Wilkerson v. State,
881 S.W.2d 321, 322 (Tex. Crim. App.), cert. denied, 115 S. Ct. 671 (1994). Moreover, the
trial court had properly placed the burden of proof on the State in the jury instructions, and
appellant had earlier in argument reminded the jury of that burden. We find no prosecutorial
misconduct in this regard.

 The second complaint is that the prosecutor misstated the evidence. This complaint
is based in part on the prosecutor's argument requesting the jury to convict both men, not one,
for it would not be fair to convict one "who didn't shoot" because of an identification witness and
not the one "who was . . . shooting a gun." Only counsel for co-defendant Alexander objected
and accepted the trial court's jury instruction for the jurors "to remember the evidence as
presented."

 Appellant also mentions the prosecutor's argument that Alexander had been "hiding
and concealing himself." Here again, appellant did not object. Any impropriety in a prosecutor's
argument is waived by a defendant's failure to make a proper and timely objection. Borger v.
State, 672 S.W.2d 456, 457-58 (Tex. Crim. App. 1984). We find no agreement between the
defendants, approved by the trial court, that any objection by one would be adopted by the other. 
Appellant makes no such claim. An examination of the record shows that the prosecutor was
making reasonable deductions from the evidence within the area of approved jury argument. 
Todd, 598 S.W.2d at 297. We find no prosecutorial misconduct in the second complaint.

 In the third complaint, appellant argues that the prosecutor misapplied the
"Willis/Rhynes" (5) testimony to him in jury argument. Rhynes had testified to Alexander's
admission of the charged offense. Orally and in writing the trial court had instructed the jury that
the evidence was admitted only against Alexander and could not be considered against appellant. 
In jury argument the prosecutor stated that Rhynes's testimony was all that was needed to convict
Alexander. He added, "That is why they don't want you to pay any attention to Mr. Rhynes." 
The trial court sustained appellant's objection to the use of "they." When the prosecutor again
used "they" in argument, the trial court reminded him that Rhynes had testified against Alexander
only. Appellant's mistrial motion was overruled. Later, when the prosecutor argued t hat "they
didn't lay a glove on that man [Rhynes]," the trial court reminded the prosecutor not to use
"they." The prosecutor responded: "I am sorry, Judge. I don't mean to imply Mr. Harris
[appellant] when I am talking about Mr. Rhynes. He can object all he wants, but I am not talking
about Tyrone Harris."

 The trial court sustained appellant's first objection and appellant asked for no
further relief. When the trial court first admonished the prosecutor not to use "they" again,
appellant asked for a mistrial without first objecting and requesting an instruction to disregard. 
Upon the second admonishment, the prosecutor filed the above-described disclaimer. Throughout
the complained-of-argument, the prosecutor repeatedly referred only to Mr. Sheffield, counsel for
the co-defendant Alexander. The prosecutor's argument was not manifestly improper or extreme,
did not violate a mandatory statute, or inject new and harmful facts into evidence. There was no
reversible error. Todd, 598 S.W.2d at 297. Appellant's claim of prosecutorial misconduct, based
on three instances of jury argument, is without merit. Point of error ten is overruled.



CUMULATION ORDER


 In appellant's eleventh and last point of error, it is urged that the "trial court
improperly cumulated appellant's sentence where the State offered no evidence as to a previous
conviction." Prior to trial the State filed a motion to cumulate sentences, thus putting appellant
on notice that in event of a conviction it would seek to "stack" the instant sentence on the
aggravated robbery sentence (cause number 43,891) arising out of the 27th District Court of Bell
County, dated June 13, 1994. The motion was later granted and the instant sentence contains a
cumulation order. See Tex. Code Crim. Proc. Ann. art. 42.08 (West Supp. 1997).

 Appellant contends that there is no evidence in the record supporting the cumulation
order and that the order is void. Appellant relies upon Turner v. State, 733 S.W.2d 218, 223
(Tex. Crim. App. 1987), which set aside a cumulative order because the State failed to present
record evidence of the previous convictions and testimony identifying the defendant as the person
previously convicted. See also Johnson v. State, 749 S.W.2d 513, 515 (Tex. App.--Houston [1st
Dist.] 1988, no pet.). The State urges, however, that under the circumstances of the instant case,
the record evidence does support the cumulation order, particularly in light of Resanovich v. State,
906 S.W.2d 40 (Tex. Crim. App. 1995) and Montgomery v. State, 876 S.W.2d 414 (Tex.
App.--Austin 1994, pet. ref'd). In Montgomery, it was held that a presentence report, the accuracy
of which was not disputed by defendant, was sufficient proof of a prior conviction to support the
cumulation order. Montgomery, 876 S.W.2d at 416. In Resanovich, the cumulation order was
held supported by defense counsel's admission that the defendant was currently serving the prior
murder sentence and the defendant's failure to object to the State's observations that the defendant
was serving a sentence for murder. Resanovich, 906 S.W.2d at 42.

 A presentence investigation report, with certain exceptions not applicable here, is
mandatory in all felony cases. Tex. Code Crim. Proc. Ann. art. 42.12, § 9(a)(j) (West Supp.
1997). After the report is prepared by the supervision officer under the direction of the trial
court, it is given to the trial court to aid it in assessing punishment including the question whether
to grant community supervision. Id.; Tex. Code Crim. Proc. Ann. art. 37.07, § 3(d) (West Supp.
1997). The presentence report is a fundamental source of information for all sentencing. 42
George E. Dix & George O. Dawson, Criminal Practice and Procedure, § 38.201 at 673 (Texas
Practice 1995) (hereinafter Dix).

 The presentence investigation report is required to include, inter alia, "the criminal
and social history of the defendant," Tex. Code Crim. Proc. Ann. art. 42.12, § 9(a) (West Supp.
1997). This typically would encompass the "rap sheet." Dix, § 38.107 at 675. The Code of
Criminal Procedure also speaks of the trial court "considering the report." Tex. Code Crim.
Proc. Ann. art. 37.07(d) (West Supp. 1997).

 The report is hearsay that is statutorily authorized. Dix, § 38.103 at 673-74. The
Texas Rules of Criminal Evidence apply to the penalty stage of a criminal case "to the extent
matters of evidence are not provided for in the statutes which govern procedures therein." Tex.
R. Crim. Evid 1101(d). Since the presentence report is to be considered by the trial court, it is
not subject to exclusion by the Texas Rules of Criminal Evidence on the basis of hearsay. Dix,
§ 38.103 at 674; see also Brown v. State, 478 S.W.2d 550, 551 (Tex. Crim. App. 1972) (a pre-Rules case).

 The presentence report in the instant case contains a reference to appellant's prior
conviction for aggravated robbery in the 27th District Court on June 13, 1994. The presentence
report, a part of this record, was made available to appellant and his counsel as well as to the
prosecutor. Tex. Code Crim. Proc. Ann. art. 42.12, § 9(e) (West Supp. 1997).

 At the penalty stage of the trial, the trial court announced it had "received and
reviewed the presentence investigative reports" and inquired whether the State had "any additional
evidence." The prosecutor stated that he would offer "no additional evidence." Appellant's
objection to a characterization of some of the information in the presentence report was sustained,
but his objections to the mention of pending and unadjudicated cases and arrests was overruled. 
No objection was addressed to the inclusion of appellant's 1994 aggravated robbery conviction
in the presentence report. Appellant's step-father was called as a witness by the defense counsel
who established that he and the witness had reviewed the presentence report. During argument,
appellant's counsel told the court that appellant "already has a 99 year sentence" and that stacking
the sentences would deprive appellant of a chance for rehabilitation. The prosecutor then told the
trial court that the 99-year sentence appellant received in Judge Morris's court last June was on
appeal and not final. He urged a cumulation of the sentences.

 At the conclusion of the punishment hearing, the trial court personally addressed
appellant and told him that the court had considered the evidence in the case, read the presentence
report, considered the State's motion to cumulate sentences, and all other facts of the case, and
it was going to cumulate the sentences. Appellant was then informed that the trial court would
impose a life sentence if appellant had "nothing legally to say." The record does not show that
appellant or his counsel put forth any reason why the sentence should not be assessed or
cumulated. In light of Montgomery and Resanovich, there is sufficient record evidence of the
prior conviction to support the cumulation order.

 In addition, the record shows that the first hearing on the State's motion for joinder
was heard before Judge Rick Morris of the 27th District Court of Bell County. At the hearing,
counsel for co-defendant, who desired a severance if the joinder was granted, asked Judge Morris
to take judicial notice of the conviction in cause number 43,891 in the 27th District Court styled
"The State of Texas v. Tyrone Akito Harris." Judge Morris took judicial notice without objection
from appellant. The motion for joinder was taken under advisement and never ruled upon. At
a second hearing on the State's motion to join parties before visiting judge Jack Prescott, counsel
for Alexander again pointed out that appellant had been convicted of aggravated robbery, giving
the cause number and style of the case, and asked that a joinder not be permitted. Appellant's
counsel then stated: "Your Honor, on behalf of Mr. Harris, I would join in what Mr. Sheffield
[counsel for Alexander] has already stated and requested." Later, appellant asked to have the
jurors polled as to whether they had read certain newspaper articles about the prior conviction. 
Thus, the record is replete with statements about and evidence of the prior conviction independent
of the presentence report. 

 If the prosecutor had carefully offered evidence as required by Turner or by
stipulation, the issue presented would have been avoided. We conclude for the reasons discussed
above, however, that the eleventh point should be overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Carroll, Justices Kidd and Onion; Chief Justice Carroll not participating

Affirmed

Filed: February 6, 1997

Do Not Publish


* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Tex. Penal Code Ann. §§ 15.01(a) & 19.03(a)(2) (West 1994). The current code is cited
for convenience. The applicable law is the law in effect at the time of the offense. See Act
of May 8, 1975, 64th Leg., R.S., ch. 203, § 4, 1975 Tex. Gen. Laws 476, 478 (Tex. Penal Code
§ 15.01, since amended); Act of April 16, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen.
Laws 434 (Tex. Penal Code § 19.03(a), since amended). 
2.   The facts are discussed in greater detail in Alexander, No. 03-95-00362-CR, this day
decided.
3.   If an event occurs during trial that prejudices one defendant but not another, the
proper action is a motion for mistrial as to the prejudiced defendant, not a motion to sever. 
See Goode v. State, 740 S.W.2d 453, 463 (Tex. Crim. App. 1987).
4.   U.S. Const. amend. XIV; Tex. Const. art. I, § 19.
5.   The witness Marvin Rhynes was also known as Willis.



ences would deprive appellant of a chance for rehabilitation. The prosecutor then told the
trial court that the 99-year sentence appellant received in Judge Morris's court last June was on
appeal and not final. He urged a cumulation of the sentences.

 At the conclusion of the punishment hearing, the trial court personally addressed
appellant and told him that the court had considered the evidence in the case, read the presentence
report, considered the State's motion to cumulate sentences, and all other facts of the case, and
it was going to cumulate the sentences. Appellant was then informed that the trial court would
impose a life sentence if appellant had "nothing legally to say." The record does not show that
appellant or his counsel put forth any reason why the sentence should not be assessed or
cumulated. In light of