**Jimmy Webb TODD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59180.**

Court of Criminal Appeals of Texas, Panel No. 2.

May 7, 1980.

Melvyn Carson Bruder, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Stephen J. Wilensky, Braden W. Sparks and David Schick, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This appeal follows conviction for the offense of aggravated rape. Upon the jury's finding that the allegations contained in two enhancement paragraphs of the indictment were true, the trial court assessed appellant's punishment at life confinement pursuant to V.T.C.A. Penal Code, § 12.42(d).

The State's evidence established that on May 9, 1977, between 8:30 and 9:00 a. m., the complainant answered a knock at her

upstairs apartment door. A man identified by complainant as appellant advised her that he was there to exterminate the apartment. Complainant replied that she knew nothing of plans to exterminate, and told him to check with the manager, complainant's mother. Appellant then asked complainant whether she had any medicines, explaining that the poison could get into the bottles. Complainant told appellant he could not come in, and saw him walk away as she closed the door.[1]

Complainant walked into her bathroom and began looking for bottles of medicine. Suddenly, appellant appeared and grabbed her from behind by the neck, holding her against him with the "crook of his elbow." Complainant then saw a knife which she described as a pocket knife with an approximately two inch blade. Complainant testified: "He told me that if I screamed that he would kill me." Appellant then took her to the bed undressed her completely and dropped his own pants to his knees. He then penetrated her vagina with his penis. After appellant was finished he asked complainant, "Did it feel good? She replied, "no;" appellant pulled up his pants and left. Complainant dressed and sought her mother. They walked to a phone booth and called the police and complainant's husband.

The fourteen year old complainant testified that she did not know appellant; when he grabbed her by the neck she could not speak, and she cooperated because she was in fear for her life. Hair specimens taken from the scene compared favorably with known hair samples taken from appellant,

and fluid samples obtained from the vagina of the victim within hours of the rape revealed motile sperm and a high presence of semen. Through chemical analysis of the semen samples it was determined that the blood type of the assailant was the same as that of appellant.

■ By his first ground of error, appellant complains of the trial court's refusal to recuse himself. The Honorable Herbert Line, a retired district judge, was administratively assigned on October 27, 1977, to preside over the 203rd Judicial District Court for a two week period beginning October 30, 1977 pursuant to Article 200a, V.T.C.A., Civil Statutes. At the time of this assignment, Judge Line was seventy years and five months old. The instant case came on for trial on October 31, 1977 and at that time appellant moved that Judge Line recuse himself for disqualification under Article 200a, § 5a, supra.[2]

This contention has been decided adversely to appellant; in *Jackson v. State*, 567 S.W.2d 222, 223 (Tex.Cr.App.1978) a panel of this Court held:

"The age limit of seventy years found in Sec. 5a, supra, does not apply to retired or 'regular' district judges; it applies only to 'former' district judges. [Citation omitted]

The retired district judge who presided at appellant's trial was lawfully assigned to the district court."

This ground of error is overruled.

■ Appellant's second ground of error complains of the admission during the

1. The evidence showed that the lock on this door was inoperative.

2. Article 200a, § 5a, supra, provides:
   Retired district judges, as defined by Article 6228(b) of the Revised Civil Statutes of Texas, as amended, who have consented to be subject to assignment, all regular district judges in this state, and all former district judges who were elected at a general election or appointed by the governor; who have not been defeated for reelection; who have not been removed from office by impeachment, the Supreme Court, the governor upon address of the legislature, the State Judicial Qualifications Commission, or by the legislature's abolishment of the judge's court; *who*

*are not more than 70 years of age*; and who certify to the presiding judge a willingness to serve and to comply with the same prohibitions relating to the practice of law that are imposed on a retired judge by Section 7, Article 6228(b) of the Revised Civil Statutes of Texas, 1925, as amended or hereafter amended, may be assigned under the provisions of this Act by the presiding judge of the administrative judicial district wherein such assigned judge resides, and while so assigned, shall have all the powers of a judge thereof. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated).

State's rebuttal testimony of extraneous conduct on the part of the accused, which constituted a similar rape offense. It is appellant's contention that the sole witness he presented during his case in chief, a supervisory employee at appellant's place of employment, did not raise the issue of alibi through his testimony that appellant "punched in" at 9:21 a. m. on the morning of the rape. The State retorts that while appellant did not raise a "perfect" alibi defense through this testimony, the issue was nevertheless raised, particularly when coupled with the witness' testimony regarding the time it takes to walk from the employees' parking lot to the company's main building complex.

Upon our reading of the record as a whole, we find that we need not resolve this issue on the considerations advanced by the parties, because the extraneous offense was appropriately admitted to rebut the defensive theory of misidentification, of which the alibi evidence was only a part; undermining the identity of appellant as the rapist was the patent aim of the entire defense strategy.

The complainant provided the sole eyewitness identification of appellant.[3] On cross examination, appellant's attorney confronted her with her prior inconsistent examining trial testimony regarding the time of the commission of the offense and her failure to identify appellant at that time.

At the examining trial, complainant had testified that the rape had occurred around 9:00 a. m., while at trial she admitted she had been earlier mistaken because she now remembered it was closer to 8:30.

We believe that this cross examination, coupled with evidence that the police received a radio call reporting the offense at 9:10 a. m., and that it was approximately 3.3 miles (10 minutes driving time) from complainant's apartment to appellant's work place, may well have alone rendered the complained of evidence admissible upon the presentation of appellant's "imperfect" alibi defense. This is so because while appellant presented rebuttal testimony that

he and his ex-fiancee had 3 cars between them and 2 were often in repair, he then left the jury to speculate about the possibility that he had therefore been "on foot" around the time of the commission of the offense and could not possibly have arrived at work by 9:21 a. m. had he detoured to rape complainant. [See also, n. 5, *infra*, and accompanying text.]

Complainant's opportunity to observe her assailant and the consistency of her description of him were attacked; her age of fourteen and her seventh grade education were offered as reasons for her "suggestibility," both on cross examination and during final argument. One of the investigating officers was vigorously cross examined regarding both a "change" he made in his police report regarding complainant's description of her attacker, and the asserted impermissibly suggestive photographic line-up he displayed to complainant 16 days after the offense. A repeated theme of the defense cross examination, as well as rebuttal evidence, was the unreliability of all testimony regarding the length and color of the assailant's hair. Furthermore, appellant's ex-fiancee testified that she was familiar with all of appellant's clothing, and that he did not possess a short sleeved, yellow striped shirt such as the one described by complainant as having been worn by her assailant.

Additionally, appellant's counsel sought to undermine the testimony of the State's expert witnesses, particularly that of Sally Williams, a medical technologist employed by the Southwestern Institute of Forensic Science to supervise detection and identification of blood, body fluids and hair. This witness testified that the hair samples obtained from the scene, which matched those taken from appellant, would be found on one person in 20,000,000. Appellant's counsel laboriously cross examined this witness, ultimately establishing that the witness did not know either the chemical elemental makeup of hair, or anything about neutron activation analysis of hair. Williams admitted she did not know whether

---

3.  Compare *Redd v. State*, 522 S.W.2d 890 (Tex. Cr.App.1975).

the elemental composition of hair would be affected by perspiration, washing, putting oil on or hair spraying the hair. She admitted she did not determine the metric diameter measurement of the hair shafts compared,[4] and finally that she made no comparisons of hair or blood type with samples taken from the victim's husband.

Any doubt left regarding the defensive trial strategy advanced in this week long proceeding which fills 1,311 pages of transcription, is assuaged by a review of defense counsel's final argument on the issue of guilt: The asserted questionable identification of appellant as the assailant was doggedly argued as the factor which provided the jury with reasonable doubt as to appellant's guilt. The alibi, characterized by the State as "imperfect," was likewise forcefully advanced.[5]

It is therefore clear that the only purpose for the lengthy and vigorous voir dire and cross examination of the State's identifying witnesses by appellant's attorney was to make a defensive issue of the identity of appellant and cast doubt upon his being the guilty man.

We hold that this, coupled with the testimony of appellant's witnesses, rendered the strikingly similar extraneous rape committed within 15 days of the primary rape admissible to rebut the defensive issue of misidentification of appellant. *Walker v. State*, 588 S.W.2d 920 (Tex.Cr.App.1979) (Rehearing en banc denied January 23,

1980); *Lusk v. State*, 511 S.W.2d 279 (Tex. Cr.App.1974); *Gillon v. State*, 492 S.W.2d 948 (Tex.Cr.App.1973); *Parks v. State*, 437 S.W.2d 554 (Tex.Cr.App.1969). This ground of error is overruled.

■ Appellant's third ground of error alleges that there is a fatal variance between the evidence and the allegation made in the third paragraph of the indictment returned against him. Specifically, it is appellant's contention that the evidence showed that the conviction alleged for enhancement resulted from a revocation of probation, but the indictment alleged only a "final conviction." This contention is clearly without merit.

Proof by the State that a judgment of conviction was suspended but later revoked, constitutes proof that the conviction became "final" upon such revocation of probation and timely pronouncement of sentence. *Fetters v. State*, 108 Tex.Cr.R. 282, 1 S.W.2d 312 (1927). We hold that this proof by the State is sufficient to support the allegations contained in the enhancement paragraph and constitutes no variance. Cf. *Spiers v. State*, 552 S.W.2d 851 (Tex.Cr.App. 1977). This contention is overruled.

In ground of error four, appellant asserts that there is no competent evidence upon which the enhanced punishment assessed can be sustained. The attestation of the Texas Department of Corrections' record clerk accompanying the "pen packets" re-

---

4. The State strenuously objected to counsel's questioning the witness on matters outside her area of expertise; though the objections were repeatedly sustained, defense counsel continued, claiming he did not understand the court's ruling and arguing that he was being denied his right of cross examination. Most of this "bickering" (to use the court's characterization) transpired in the presence of the jury. The record contains a jury note sent out during deliberation on guilt-innocence requesting the "testimony of [Sally] Williams for both days of her testimony," as well as another note requesting "the hair exhibit, both picture lineups, the picture of the Defendant taken after his arrest, the xerox copies of the [employment] time cards. . . ."

5. "What about [the complainant], and the times?—The times that we know. Remember I

was the one that asked the officers—I was the one that wanted to see everything. And the officer came back with his notes about [complainant], and he said at 9:10 the police got the call. That's what they told you. 9:10. It takes approximately 8 to 10 minutes to get from [complainant's] apartment to Lone Star Cadillac.

So let's assume that he left at 9:10, immediately before the police got there. Immediately before the police got there. What's ten minutes?—And 9:10? At best, it's 9:20. The best it would be would be 9:20.

And you can look at Defendant's Exhibit No. 4 once again and see that the times do not add up. I mean, if we use the State's own numbers, things don't add up. He should have been there quicker. He should have clocked in earlier, even if we use the State's own numbers."

lied upon by the State for proof of the alleged enhancement paragraphs, recites that the record clerk is the legal custodian of "the original files and records of persons . . . committed" to the State prison, and "that the photograph, fingerprints and commitments attached hereto are copies of the original records of Jimmy Todd Webb."

■ Appellant claims that the failure of this attestation to "mention . . . by either specific or general reference" the authenticity of any judgments or sentences contained in State's Exhibits 33 or 34, rendered those documents inadmissible for failure to meet the requisites of Article 3731a, § 4, V.T.C.A., Civil Statutes, the "Official Records Act," [hereafter referred to as the Act]. This contention is without merit.

Reference in the attestation to "commitments" is a generic one, including judgments and sentences in the described causes, to identify official records of the Department of Corrections by which it is authorized and directed to confine the convict named therein. Articles 16.20, 42.02, 42.09, V.A.C.C.P.[6]

Appellant contends in the alternative that State's Exhibits 33 and 34 are inadmissible because, assuming that the record clerk has attested the authenticity of the judgments and sentences, "the fact is that [he] is not the legal custodian of the originals" of such documents, that responsibility being imposed solely upon the State's district clerks.

■ It is well settled that the attestation of a district clerk of a county of this State, upon a copy of a judgment or sentence received and filed by that district clerk, is alone sufficient to render such documents admissible into evidence for the truth of the matters stated therein. *Speights v. State*, 499 S.W.2d 119 (Tex.Cr.App.1973); Article 3731a, § 4; Article 2.21, V.A.C.C.P.; see also, e. g., 40.09, § 1 and Article 43.11, V.A.C.C.P. It is only by virtue of the direction that a convict is to be imprisoned recited by a felony sentence certified by the district clerk, that a county sheriff has the authority to place him in jail and the confining agency has the authority to receive and confine him. See Articles 43.11 and 44.26, 44.27 and 44.05, V.A.C.C.P.

The judgments and sentences, copies of which are in issue, bear the proper certification of the Dallas County District Clerk and are without question "written instruments" within the contemplation of Article 3731a, § 1, supra.[7] On receipt of the certified copies of these prior "commitments," employees of the Texas Department of Corrections confined appellant pursuant thereto, and made such commitments part of "the record on each inmate" that the Director is required by law to maintain. See Article 43.11, V.A.C.C.P., and Article 6181–1, § 2, V.T.C.A., Civil Statutes. Under the authority vested in him by Article 6166j, supra, the Director of the Texas Department of Corrections may designate and employ a person whose responsibility is to make and maintain in his custody, such records.

Section 4 of Article 3731a, supra, provides a method by which the content of records—declared admissible by Section 1—may be introduced into evidence without the court attendance of a legal custodian, which would otherwise be required in order to lay the testimonial predicate for admission.[8] In

---

6. See generally *Ex parte Haynes*, 98 Tex.Cr.R. 609, 267 S.W. 490, 492; *Gardner v. State*, 542 S.W.2d 127, 131 (Tex.Cr.App.1976); Black's Law Dictionary, Revised Fourth Edition, 341. As pointed out in *Ex Parte Collier*, 156 Tex. Cr.R. 377, 243 S.W.2d 177 (1951), "[T]he sentence is a final judgment . . . [that] . . should further convey to the penitentiary authorities clear and unequivocal orders of the trial court so that they may know definitely how long to detain the convict."

7. Article 3731a, supra, provides in pertinent part:

Section 1. Any written instrument . . . made by an officer of this State or of any governmental subdivision thereof, or by his deputy, . . . in the performance of the functions of his office and employment *shall be*, so far as relevant, *admitted in the courts of this State as evidence of the matter stated therein*, . . .

8. Section 4, supra, entitled "Authentication of Copy," provides in relevant part:

Such writings . . . may be evidenced . . . by a copy or electronic duplication *attested by the officer having legal custody* of

this case, because the judgments and sentences are not "official writings" or "official instruments" made *BY* an officer of *the Texas Department of Corrections* within the meaning of Section 1, supra [see n. 7, supra], the Act requires that the record clerk's attestation be accompanied by a certificate that he is in fact a legal custodian of such "official writings," made by the officer of the Dallas County District Clerk, a public office. *Id.*

In the instant case, Billy R. Ware, the record clerk of the Department of Corrections, certified, in addition to his custodianship, that,

I have compared the attached copies with their respective originals now on file in my office and each thereof contains, and is a full, true and correct transcript and copy from its said original.

Accompanying this attestation is a certification from the Walker County Judge that,

Billy R. Ware, whose name is subscribed to the above certificate, was at the date thereof, and is now Record Clerk of the Texas Department of Corrections, and is the legal keeper and the officer having the legal custody of the original records of the said Texas Department of Corrections: . . .

Accordingly, the statutory safeguards prescribed for assuring the reliability of the matters stated in the judgments and sentences in issue, were effected in all respects, and the State thereby met its burden of establishing that the commitments were admissible as an exception to the prohibition against hearsay evidence. Contained within State's Exhibits 33 and 34 are each and every fact necessary to sustain the jury's verdicts of "true" regarding the State's enhancement allegations. We hold the evidence is therefore sufficient. This ground of error is overruled.

■ Ground of error five complains of the trial court's refusal to grant a mistrial after the prosecutor implied in a question that defense counsel misstated the facts, thereby attacking defense counsel.

Dallas Police Officer Robert Gage investigated the rape and conducted the photographic line-up in which complainant identified appellant. During cross examination of Gage, defense counsel secured a copy of the offense report with which Gage had refreshed his memory, and questioned the witness about the report, noting that "there are some changes from the original officer's report." When Gage was passed for redirect examination, the prosecutor offered the offense report into evidence. Defense counsel interposed a lengthy objection, a portion of which follows:

. . . [H]e is striking at the Defendant over the shoulder of his attorney by requiring him to object and make it look like he is trying to hide something, and is keeping something away from the jury. Just the mere offering of that report in front of the jury and requiring the Defendant to object to it has been held to be reversible error in several cases, where the witness had not read from the exhibit, and to tell the truth, I don't know if you sustain the objection and tell the jury to disregard it, I still request this Court to grant a mistrial, but I'm just making my objection right now.

Ultimately, after a protracted disagreement as to whether defense counsel had had Gage read from the report, the objection was sustained.

The prosecutor thereafter, during redirect examination of Gage, stated:

Q: Now, with regard to [defense counsel's] questions about which ones [sic] you actually changed, or implied that [complainant] told you something different than what is on that report. . . .

the record, or by his deputy. *Except in the case of a copy of an official writing* or official electronic recording *from a public office of this State* or a subdivision thereof, *the attestation shall be accompanied with a certificate that the attesting officer has the legal custo-*

dy *of such writing.* If the office in which the record is kept is within the United States . . . ., the certificate may be made by a judge of a court of record of the . . . political subdivision in which the record is kept, authenticated by the seal of his office.

At this point, defense counsel objected. The prosecutor was instructed to rephrase the question, and the jury was instructed to disregard it. Appellant's motion for mistrial was overruled.

While this Court does not condone side bar remarks interjected by counsel, a review of appellant's cross examination of Officer Gage reveals an implication that complainant told the officer something different from that which appeared on the offense report. Therefore, the prosecutor's improper preface was not such as would be clearly calculated to inflame the minds of the jurors, or of such character as to suggest the impossibility of withdrawing the prejudicial impression; accordingly, error, if any, was cured by the trial court's instruction to disregard. *Torres v. State*, 552 S.W.2d 821 (Tex.Cr.App.1977); *Ashley v. State*, 527 S.W.2d 302 (Tex.Cr.App.1975); *Bolden v. State*, 504 S.W.2d 418 (Tex.Cr. App.1974). No error is shown; this ground of error is without merit.

Grounds of error six through nine complain of improper final argument by the prosecutor at the guilt-innocence stage of trial. First appellant complains that the following constituted a comment on the accused's failure to testify:

Ladies and Gentlemen, you have eyewitness identification corroborated by overwhelming physical evidence, corroborated by an extraneous offense, by another person, another individual. And I submit to you if we can't find the Defendant guilty with a case of this type of evidence, that we might as well hang it up and go home. *We ask you, based on the overwhelming, uncontroverted.* . . .

Appellant at this point interposed proper objection which was overruled and the court instructed the prosecutor to finish his statement, which he did:

I said—*due to the uncontroverted evidence*—that the hair in that bed in all probability came from this man right over here [indicating]. The probability is overwhelming when you corroborate the eyewitness identification of the [complainant] which is corroborated by the

eyewitness identification in and out of the court of [the victim of the extraneous offense], that we ask you to find the Defendant guilty just as he is charged in this case.

Appellant repeated his timely specific objection "to the entire statement as being a comment on the failure of the Defendant to testify." The trial court overruled this objection.

Appellant asserts that, "a statement that certain evidence, whether physical or testimonial, is uncontroverted is a comment on the accused's failure to testify where the record indicates that no person other than the accused could have offered contradictory testimony," citing *Pollard v. State*, 552 S.W.2d 475 (Tex.Cr.App.1977); *Dubose v. State*, 531 S.W.2d 330 (Tex.Cr.App.1976); *McDaniel v. State*, 524 S.W.2d 68 (Tex.Cr. App.1975); and *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App.1975).

It is settled that, when viewed from the standpoint of the jury, the implication that the language used by the prosecutor had reference to the accused's failure to testify, must be a necessary one; otherwise, the argument will not constitute an improper comment. *Pollard v. State*, supra; *McDaniel*, supra. Furthermore, "It is not sufficient that the language *might* be construed as an implied or indirect allusion" to the accused's invocation of his Fifth Amendment right to silence. *Griffin v. State*, 554 S.W.2d 688, 689–690 (Tex.Cr.App.1977); see also *McDaniel v. State*, supra.

However, "an indirect comment that labels *certain* evidence as uncontroverted, unrefuted or uncontradicted is impermissible if *only* the defendant could offer the rebutting evidence. *Pollard v. State*, supra; *Dubose v. State*, supra; *Bird v. State*, supra. Thus, if the remark complained of called the jury's attention to the absence of evidence that only the testimony from the appellant could supply, the conviction must be reversed." *Myers v. State*, 573 S.W.2d 19, 20–21 (Tex.Cr.App.1978).

In *Pollard v. State*, supra, the prosecutorial argument found improper was:

There has been a little talk about whether or not Mrs. S—— remembered the *tire tool* the first time she was questioned or thereafter. The point is simple enough. The defendant got out of his car with the tire tool behind his back. Ten or fifteen seconds later he is upon [the victim]. She sees him. *No one contradicts her.* She says she saw it.

In *Dubose v. State,* supra, the following comment was found to be a *direct* comment on the accused's failure to testify:

Not one single time, not one sentence, not one scintilla of evidence, *not one word in any way did this defendant* or these attorneys *challenge* the credibility of [the victim].

*McDaniel v. State,* supra, was reversed for the following statement by the prosecutor made in a case where the accused presented no evidence and the only witnesses to the offense were the complaining witness' two small children:

*There were three people* there that could tell you *what happened* . . . and [*two of them*] are too young. They *are not legally competent to testify* . . .

Finally, in *Bird v. State,* supra, the prosecutor, referring to a homemade silencer, and stated that the accused could have made it because he was a machinist, then turned to the accused and asked, "where did you get it?"

By contrast, the argument in the instant case was clearly a summarization of the evidence adduced in general and a reiteration of the fact that the State's evidence of appellant's guilt was overwhelming. From the jury's standpoint, the argument could have been directed at appellant's failure to call his own expert witness for hair analysis testimony, or at the fact that appellant's introduction through testimony of his employment time records did not controvert the complainant's testimony, or at the fact that appellant's ex-fiancee's testimony did not contradict the State's material evidence.

We hold that the argument complained of was not of such a character as to require the necessary conclusion that the State was directing attention to the failure of appellant to testify. *Annis v. State,* 578 S.W.2d 406 (Tex.Cr.App.1979); *Bird v. State,* supra.

This sixth ground of error is overruled.

■ In grounds of error seven and eight appellant makes complaint or argument by the prosecutor which followed an explanation of the four types of permissible jury argument:

Now, [defense counsel] immediately stood up and went outside of the record in this case to read you something from a law book what the pledge is that I took, that Mr. Schick and I swore to, when we first became Assistant District Attorneys. I'll tell you that he quotes the part that says, "We shall not suppress evidence," and then he makes the comment "and I suggest to you that that means keep the paperwork away from you." And then he later on in his argument says, "I suggest to you that the State does not want you to see the whole picture," and then a little later on he says, "I was the one that asked the officers for their notes."

Now, ladies and gentlemen, the only clearcut implication from those comments, which are totally outside of the record, is that the State is attempting to hide from you the police reports made by the officers in this case. I want to tell you two things.

First of all, *the State cannot offer those into evidence. The State cannot do that. Only the defense can do that.* If it wasn't so you would know, he would object to my last comment.

[Defense counsel]: Your Honor, in that case I will object to his comment. The records that were admissible before the jury are before the jury. The records that are admissible before the Court are before the Court. I object to him telling—attempting to strike at the Defendant over the shoulder of his attorney and secondly, inferring to the jury that the Court is not following the law.

THE COURT: Overruled.

\*       \*       \*       \*       \*       \*

[Prosecutor]: And secondly, let me tell you in the same regard that [Defense counsel] *filed a motion in this case to prevent the State from showing any records whatsoever to anybody, including witnesses, and to have those records tendered to Defense counsel without ever showing them or making a show of them, and that is in the motions of this case.*

[Defense counsel]: Judge, objection, outside the record.

[Prosecutor]: Your Honor, that is specifically in answer to what he said.

[Defense counsel]: In that case, I would like the record to reflect that not one time did they ever follow the Court's instructions.

[Prosecutor]: That's not true either.

[Defense counsel]: That they bought the officers back and put the officers on the witness stand to make a big to-do about the records.

THE COURT: I'm going again to leave this to the sound discretion of the jury. They have heard all of the arguments thus far.

Appellant asserts that the portion emphasized first above had the effect of telling the jury, "albeit subtly and inferentially, yet effectively, nonetheless, that there is information that would be of help to them, but they can't see it. This invites speculation, which is improper, and it has a tendency to make the jury believe that the defendant is out to hide everything he can." While we agree that an invitation to the jury to speculate is improper, our reading of this record, and particularly defense counsel's final argument referenced by the prosecutor, persuades us that this argument was thereby invited. As such, no error is shown. *Thomas v. State,* 578 S.W.2d 691 (Tex.Cr.App.1979); *Hammett v. State,* 578 S.W.2d 699 (Tex.Cr.App.1979); *Mays v.*

State, 563 S.W.2d 260 (Tex.Cr.App.1978); *Stearn v. State,* 487 S.W.2d 734 (Tex.Cr.App.1972). [See also treatment of fifth ground of error, *ante.*]

As to the prosecutor's reference to motions filed by the defense, [see *ante*] we agree that such an argument is entirely improper as a comment outside the record. However, *no reversible error is shown,* as we are again constrained to hold that this argument was invited. A review of appellant's final jury argument reveals that the accusations exchanged by counsel regarding the adversary's desire to "keep things from the jury," was begun by defense counsel.[9] *Id.* Compare *Cook v. State,* 537 S.W.2d 258 (Tex.Cr.App.1976). Furthermore, appellant failed to obtain a ruling on this objection, and as such, nothing is presented for review. Grounds of error seven and eight are overruled.

Appellant next complains of the prosecutor's statement during closing argument:

[Defense counsel] talked about the figures, and he confuses them. He stands up there with his boyish smile which turns into a devilish grin when he is cross examining a 14-year-old with a seventh grade education—

Defense counsel objected on the ground that the prosecutor is attempting to strike at the Defendant over the shoulder of his attorney." The trial court overruled this objection.

Now appellant alleges that this comment by the prosecutor "was of the ilk condemned" in *Crutcher v. State,* 481 S.W.2d 113 (Tex.Cr.App.1972); and *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972).

It is settled that the approved general areas of jury argument, within which all proper arguments must fall are: (1) summation of the evidence: (2) reasona-

---

**9.** Defense counsel virtually began his final argument thus:

I wish you would remember who talked to you first when ya'll were a panel and what [the prosecutor] said. And if he didn't say that he wanted to get this man in the penitentiary, then forget it.

'It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict but to see that justice is done. They shall not suppress the facts—,' *which I will suggest to you means keep paperwork away from you* —'or secret[e] witnesses capable of establishing the innocence of the accused.'

ble deduction from the evidence; (3) answer to argument of opposing counsel; and, (4) plea for law enforcement. *Dunbar v. State*, 551 S.W.2d 382 (Tex.Cr.App.1977); *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App. 1973). Even when an argument exceeds the permissible bounds of the above areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused into the trial proceeding. *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.1977); *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr.App.1972).

In *Crutcher v. State*, supra, reversible error attended a statement made by the prosecutor immediately after defense counsel, having finished his argument, left the courtroom that:

> I'd sort of hoped Mr. Bruner would stay with us in the courtroom . . . but I can assure you one thing, that wherever he has gone, he is not down on his knees praying to his God. I can assure you that
> . . . .

In *Bray v. State*, supra, the prosecutor commented that he was glad he did not "represent the likes of the defendant;" thus reversal of the case was required. In *Lopez v. State*, 500 S.W.2d 844 (Tex.Cr.App.1973), reversal occasioned the prosecutor's remark to the jury that "you know the defendant's counsel is lying to you."

■ We agree with appellant that the comment complained of here was wholly improper and the trial court's failure to sustain his objection constituted error. However, we cannot say that the comment was one which was directed *at* appellant via his counsel, for the purpose of inflaming the minds of the jurors to the prejudice of the *accused*, as were the ones in the cases cited by appellant. Cf. *Edmiston v. State*, 520 S.W.2d 386 (Tex.Cr.App.1975); *Summers v. State*, 147 Tex.Cr.R. 519, 182 S.W.2d 720 (1944). See also and compare *Lewis v. State*, 529 S.W.2d 533 (Tex.Cr.App.1975); and *Anderson v. State*, 525 S.W.2d 20 (Tex. Cr.App.1975).

Our reading of this record as a whole reveals many instances of side bar personal attacks by the attorneys on one another. While we are unwilling to say that this sort of conduct can be "invited," we do not perceive it to have been extreme or manifestly improper, violative of a mandatory statute, or as having injected new facts, *harmful to the accused* into the trial. *Kerns v. State*, supra; *Thompson v. State*, supra. Ground of error nine is overruled.

■ In appellant's tenth ground of error, complaint is made of the argument on the issue of punishment, in which appellant alleges the prosecutor invited the jury to consider and apply parole law in assessing punishment. The argument complained of occurred after the prosecutor had explained to the jury the relationship between the indictment allegations and the "pen packets":

> Now, both those dates are prior to May of 1977, aren't they?—And this one page, I submit to you, is the proof that overwhelmingly supports the allegations in paragraph two.
>
> Again, simply put, these two exhibits, 32 [sic], 34, show beyond a reasonable doubt any doubt at all, that Jimmy Webb Todd committed an offense and was convicted of it. He went to the penitentiary, got out and committed a second offense, was convicted of it *just last year, but he is already out,* and he committed a third offense in May.

Appellant's objection was overruled.

We are unable to agree with appellant that this statement encouraged consideration of the law of parole. Because the jury was informed that the prior convictions alleged for enhancement must be found to be final convictions committed in sequence, the prosecutor's statement was a reasonable deduction from the evidence admitted before the jury. Cf. *Woerner v. State*, 576 S.W.2d 85 (Tex.Cr.App.1979); *Jones v. State*, 564 S.W.2d 718 (Tex.Cr.App.1979); *Clanton v. State*, 528 S.W.2d 250 (Tex.Cr.App.1975). This final ground of error is overruled.

Having found no reversible error,[10] we affirm the judgment of the trial court.

---

10. We have reviewed appellant's six grounds of error raised by an untimely supplemental pro se brief and find them to be without merit. Four of these contentions, regarding the unconstitutionality of V.T.C.A.Penal Code, § 12.42(d), have been decided adversely to appellant's position by the Supreme Court of the United States in *Rummel v. Estelle*, —— U.S. ——, 100 S.Ct. 1133, 63 L.Ed.2d 382, 26 Cr.L.Rep. 3118 (decided March 18, 1980). The remaining two assertions regard the trial court's denial of mo-

tions to appoint appellant to act as co-counsel, and to appoint a defense investigator. We find no abuse of discretion in the trial court's rulings, and we pause to note that this record reflects commendable zeal in defense counsel's representation of his client.