IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 571-03






DANIEL DALLAS HAWKINS, Appellant



v.



THE STATE OF TEXAS






ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


JEFFERSON COUNTY






 KELLER, P.J., delivered the opinion of the Court in which MEYERS,
PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. 
WOMACK, J., filed a concurring opinion in which HOLCOMB and COCHRAN, JJ.,
joined. JOHNSON, J., filed a concurring opinion.



O P I N I O N 



I. BACKGROUND


 Appellant was convicted of possession of cocaine. He complained on appeal that the prosecutor
made an improper comment regarding the application of parole law. The Court of Appeals agreed and
reversed his conviction. In its petition for discretionary review, the State complains that the Court of
Appeals conducted an improper harm analysis. We shall reverse. 

A. The complained-of argument


 During argument at the punishment phase, the following colloquy occurred:

[PROSECUTOR]: One very important thing to remember has already been alluded to by
Mr. Cooper and that is the page on the - about good time credit and parole. We can't
tell you how the Board of Prisons [sic] and Parole is going to handle this particular
inmate and when he's going to be released. The only thing we can tell you for sure
because it's the only thing we know for sure is that he will do - whatever your sentence
is, you know he will do at least a quarter. When his time - plus his good time credit equals
a quarter, okay, so it would be less than a quarter, but that's what we know for sure,
okay. I hope that makes sense to you. It's pretty clearly written and explained here. But
that's the one thing that we can tell you for sure, okay. That when his good time and
credit - his good time and actual time reaches one quarter of whatever you send
back is what he will actually serve before he's released back into your community. (1)


[DEFENSE COUNSEL]: Your Honor, I object to that. That is a misstatement of the law.


THE COURT: Sustained.


[DEFENSE COUNSEL]: Ask the jury to disregard that statement.


THE COURT: The jury is so instructed.


[DEFENSE COUNSEL]: And, again, your Honor, I move for a mistrial.


THE COURT: That's denied Mr. Cooper.


[PROSECUTOR]: I'm not sure what I misstated, your Honor.


THE COURT: You said that he would be released back into the community. That is
improper Mr. Ross.


[PROSECUTOR]: That was a misstatement. I did not mean to say that. That is when he
will be eligible to be released. I'm sorry for that. That's when he becomes eligible. That's
what you know for sure, okay.


B. Other relevant facts


 In accordance with the law, the jury charge submitted the following instruction about parole:

 Under the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the award of
good conduct time. Prison authorities may award good conduct time to a prisoner who
exhibits good behavior, diligence in carrying out prison work assignment, and attempts at
rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away
all or part of any good conduct time earned by the prisoner.

 It is also possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole.

 Under the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time served plus any
good conduct time earned equals one-fourth of the sentence imposed. Eligibility for parole
does not guarantee that parole will be granted. 

 It cannot accurately be predicted how the parole law and good conduct time might
be applied to this defendant if he is sentenced to a term of imprisonment, because the
application of these laws will depend on decisions made by prison and parole authorities.

 You may consider the existence of the parole law and good conduct time. 
However, you are not to consider the extent to which good time may be awarded to or
forfeited by this particular defendant. You are not to consider the manner in which the
parole law may be applied to this particular defendant.


C. The Court of Appeals opinion


 The Court of Appeals held that the prosecutor's argument was improper because it specifically
applied parole law to the defendant on trial. (2) It further held that the improper argument was not cured by
the trial court's instruction to disregard because the argument violated a mandatory statute. (3) In support of
this holding, the Court of Appeals quoted from Cooks v. State:

Generally, improper jury argument may be cured by an instruction to disregard, unless "in
light of the record as a whole it was extreme or manifestly improper, violative of a
mandatory statute, or injected new facts harmful to the accused." (4)


The Court of Appeals then proceeded to conduct a harm analysis under Texas Rule of Appellate
Procedure 44.2(b). (5)

 In conducting its harm analysis, the Court of Appeals applied the three-factor test articulated in
Mosley v. State, which balanced: (1) the severity of the misconduct, (2) measures adopted to cure the
misconduct, and (3) the certainty of conviction absent the misconduct. (6) The Court of Appeals found the
conduct to be severe because it violated a mandatory statute and because it was not an isolated incident,
but was a repeated reference to how the law of parole would be applied to appellant. (7) The Court of
Appeals stated that it could consider additional acts of misconduct in conducting the harm analysis, and it
counted four sustained objections prior to the complained-of argument. (8) The Court of Appeals stated that
"[t]hese improper arguments resulted from arguments outside the record, and on how parole was applied
to appellant in an earlier case." (9) In addition, the Court of Appeals faulted the prosecutor for making, after
the complained of argument, "yet another improper argument on a subject outside the record to which
appellant objected and the trial judge instructed the jury to disregard." (10) The Court of Appeals did not give
any additional details about these five arguments, but all five are included in our discussion in part II.B.2
of this opinion.

 The Court of Appeals characterized the measures taken to cure the misconduct as "nothing more
than cursory." (11) According to the Court of Appeals, the trial court simply said, "The jury is so instructed." (12) 
The Court of Appeals characterized this instruction as "tepid" and of "limited curative effect," especially
in light of the other improper arguments for which instructions to disregard were given. (13) The Court of
Appeals refused to give any weight to the prosecutor's apology regarding the error at issue in this case
because: (1) it felt that "arguments of counsel cannot substitute for instructions by the court" and (2) it felt
that considering the apology in the harm analysis "would have the effect of permitting a prosecutor to both
create and cure error," which would "undermine any meaningful harm analysis" and "encourage prosecutors
to repeat the error with impunity." (14)

 Regarding the third Mosley factor, the Court of Appeals found the certainty of appellant receiving
his eighteen-year sentence to be low without the improper argument because the amount of drugs was low
and the sentence was high. (15) In support of its assessment that the sentence was high, the Court of Appeals
observed that the sentence was on the upper end of the two-to-twenty-year punishment range and the
sentence would ordinarily have been a state jail felony - if it had not been enhanced by prior felony
convictions. (16) Concluding that harmful error occurred, the Court of Appeals affirmed the conviction,
reversed and remanded for a new trial on punishment, and declined to address appellant's sixth point of
error. (17) 

II. ANALYSIS


A. Error vs. harm and the Mosley factors


 Although the Court of Appeals and the parties have approached the issue as one of harm, that is
not a correct characterization of the issue before us. A harm analysis is employed only when there is error,
and ordinarily, error occurs only when the trial court makes a mistake. (18) Here, the trial court sustained the
defense objection and granted the requested instruction to disregard. The only adverse ruling - and thus
the only occasion for making a mistake - was the trial court's denial of the motion for mistrial. Under those
circumstances, the proper issue is whether the refusal to grant the mistrial was an abuse of discretion. (19)

 Nevertheless, the question of whether a mistrial should have been granted involves most, if not all,
of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper
conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." (20) 
In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful
that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative
instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. (21) 
 

 The federal courts have recognized the interplay between a trial court's curative actions and an
appellate court's harm analysis in the argument context. This Court has joined that recognition by applying
federal precedent in connection with argument error that is analyzed under Rule 44.2(b). Employing a harm
analysis formula in evaluating the trial court's ruling on a motion for mistrial seems especially appropriate
in the argument context, where misconduct occurs near the end of the case - giving the trial court an
appellate-like "bird's eye" view of the situation. We therefore agree that the Mosley factors should be used
to evaluate whether the trial court abused its discretion in denying a mistrial for improper argument, at least
in cases like this one, in which constitutional rights are not implicated. 

 Moreover, we also agree with the Court of Appeals that an appropriately tailored version of the
Mosley factors applies in the non-capital trial punishment phase context. We have already applied a
tailored version of the Mosley factors to the punishment phase of a capital trial, (22) and we see no impediment
to applying these factors to punishment proceedings in a non-capital case. Therefore, we apply the test
as it has been tailored for punishment proceedings. We balance three factors: (1) the severity of the
misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed
absent the misconduct (likelihood of the same punishment being assessed). (23)

B. Severity of the misconduct


1. Effect of statutory violation


 We disagree, however, with the Court of Appeals's construction and application of these factors. 
First, the Court of Appeals appears to have misapprehended the nature of the "severity of the misconduct"
factor. In Mosley, we identified "severity of the misconduct" with "the magnitude of the prejudicial effect
of the prosecutor's remarks." (24) In Martinez, Mosley's punishment phase progeny, we continued to equate
"severity of the misconduct" with its prejudicial effect. (25) Prejudice is clearly the touchstone of the first
factor in the Mosley test. To be sure, particularly offensive or outrageous conduct generally gives rise to
a natural inference of prejudice and can be considered as such, even when prejudice is not otherwise
apparent from the record. But the Court of Appeals erred in assessing "severity" in isolation from
prejudice. The Court of Appeals's opinion suggests that the prosecutorial misconduct was "severe" simply
because it violated a "mandatory statute." In the Court of Appeals's estimation, that fact alone prevented
it from being cured by an instruction to disregard. But a prohibition's source - whether it be statute, rule,
or common law - is not particularly relevant to how prejudicial an argument is or whether an instruction to
disregard can cure the argument's prejudicial effects. A prohibition that begins as a common law
requirement or a court rule may later become a statute or vice versa. Nor is the "mandatory" nature of a
statute particularly relevant. If a statute imposes requirements, then it is mandatory, and most criminal 
statutes could be properly characterized as such.

 In fact, the "mandatory statute" mantra that the Court of Appeals cites is based on questionable
lineage and is inconsistent with more recent precedent and with changes in the appellate rules. While
Cooks did indeed say that violations of mandatory statutes are exempt from the curative power of
instructions to disregard, (26) the cases the opinion cited for that proposition - Borjan v. State (27) and
Kinnamon v. State (28) - do not support it. In Borjan, the defendant's objection to the allegedly improper
argument was overruled. (29) During its discussion, the Court stated, "An improper argument constitutes
reversible error when in light of the record as a whole it was extreme or manifestly improper, violative of
a mandatory statute, or injected new facts harmful to the accused into the trial proceedings." (30) Nowhere
in this discussion did the Court mention instructions to disregard. (31) There was no reason to, since the
objection was overruled. Moreover, with the word "thus," the Court then launched immediately from its
"mandatory statute" statement into a discussion about whether the prosecutor's argument was improper,
as if the Court's statement related to error rather than to harm, (32) and the Court ultimately concluded that
the prosecutor's argument was a proper plea for law enforcement. (33) Further, the Court's statement was
dicta because violation of a mandatory statute was not at issue in the case, and, if the Court's statement
really did refer to harm, it was dicta for that reason as well. 

 Kinnamon did address the effectiveness of an instruction to disregard. (34) But, omitting any
reference to a "mandatory statute," the opinion stated the rule for reversible argument error as: "in order
for an improper argument to rise to a level mandating reversal, the argument must be 'extreme or manifestly
improper, or inject new and harmful facts into evidence.'" (35) Moreover, contrary to Cooks's language,
Kinnamon suggested that an instruction to disregard can cure the two types of egregiously improper
argument cited, (36) and in fact did cure an improper argument that injected new facts into the case. (37)

 We also point out that the "mandatory statute" language in Cooks was dicta because no mandatory
statute was violated by the State's arguments in that case. (38) So, Cooks's statement was dicta based upon
a misreading of dicta in other cases. Moreover, Cooks seems to be an anomaly in a line of cases that have
recited the "mandatory statute" language in connection with "reversible error" but have not contended that
such error is incurable. (39) 

 Aside from Kinnamon, two cases that have addressed the effectiveness of an instruction to
disregard in this context are Thompson v. State (40) and Wesbrook v. State. Thompson is ambiguous at
best because, after citing the three types of reversibly improper arguments, (41) the Court found "no reversible
error, especially in light of the court's instruction to the jury to disregard the remark." (42) While Thompson
may be ambiguous, Wesbrook is clearly at odds with Cooks. In Wesbrook, the Court recited the refrain
that improper argument is not reversible "unless, in light of the record as a whole, the argument is extreme
or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into
the trial." (43) Even though the prosecutor's argument injected new facts into the case, the Court found that
the impropriety was cured by the trial court's instruction to disregard. (44) The Court emphasized that only
"offensive or flagrant error warrants reversal when there has been an instruction to disregard" and the
comment before us was "not so flagrant that the instruction to disregard was ineffective." (45)

 However, the three-fold refrain is problematic even when it simply refers to reversible error rather
than to incurable error. The refrain traces its lineage back through Todd v. State, (46) to Vineyard v. State, (47)
and ultimately to Bowlin v. State, (48) which refers to cases collated in Branch's annotated Penal Code. (49) 
Some of the other cases cited along the way omit the "mandatory statute" part of the refrain. (50) 

 But the real problem is discovered by examining Bowlin. In that case, the prosecutor argued that
the defendant's brother did not testify for the defendant because he had participated with the defendant in
committing the crime. (51) The Court declined to find the argument improper: "Viewed in the light of the entire
record we cannot regard the argument complained of as improper. In whatever form it may have been
stated to the jury it appears to have been a conclusion deducible from the evidence and not the assertion
of some new fact." (52) Immediately following this pronouncement that the argument was proper, the Court
said, "It is only in extreme cases that this court would feel called upon to reverse on account of argument
of counsel unless he had violated some statutory provision or injected into the case facts of a harmful
character which were not in evidence." (53) As support for this statement, the Court relied upon many cases
"collated by Mr. Branch in his Ann. P. C., page 207, under Sec. 370." An examination of the 1916 edition
of Branch's Annotated Penal Code, Vol I, p. 207 reveals a §370 that is titled "Proper argument." (54) The
annotations in this section all involve different types of argument that had been held to be proper: comments
upon facts in evidence, arguing the law as well as the facts, drawing reasonable deductions from the
testimony adduced at trial, seeking a motive for facts legitimately in evidence, explaining to the jury why the
court is required to charge on all issues, telling the jury not to arrive at a verdict by lot or chance, telling the
jury to confine themselves to the testimony admitted and the charge of the court, telling the jury not to
discuss facts not in evidence, and arguing that a pardoned witness's prior felony conviction affected his
credibility. (55)

 Thus, it is apparent that the Court's statement regarding extreme arguments, statutory violations,
and new facts related to error, not harm. The Court was saying that a prosecutor's argument is improper
only (1) in extreme cases (2) if a statute were violated, or (3) if harmful facts were injected into the case
that were not in the record. The prosecutor's argument was proper because it fell within none of these
categories. Although our current jurisprudence analyzes argument error by determining whether an
argument falls within four permissible areas, as opposed to whether it falls within three impermissible
areas, that current mode of analysis began in 1973 with Alejandro v. State, which drew together various
authorities into the current framework. (56)

 Perhaps some of the confusion lies in the fact that the Bowlin Court did not stop with its citation
to §370. It continued its discussion by quoting a passage in a different section of Branch's annotations
indicating that, even if an argument were improper, it would also have to be harmful to merit reversal: "It
is further stated by him under Sec. 361, at page 204 that, 'Before a reversal would be authorized even on
account of improper argument of state's counsel, that it must clearly appear that the remarks were
improper and that they were of a material character and such as under the circumstances were
calculated to injuriously affect the rights of the [accused].'" (57) Perhaps the Court failed to clearly
distinguish between error and harm, or perhaps the passage relating to harm was simply added as an
afterthought. In any event, the §361 passage stated an entirely different test for harm than the three-fold
refrain that has cropped up in later cases.

 That the Bowlin court was concerned with error - or at most, error and harm together, without
distinguishing between the two - is further supported by the Court's treatment of the argument issue in
Vineyard. In that case, the defense objected to the prosecutor's argument, but the

trial court declined to issue an instruction to disregard. (58) This Court initially phrased the issue as whether
the argument was proper, but then added a reference to harm: "Whether the argument is proper or
improper must necessarily depend upon the facts of the particular case. From the record before us we
cannot say the argument complained of was unwarranted, or of such manifest harmful character as to
demand a reversal." (59) Immediately after this sentence and supporting citations, the Court introduced the
three-fold refrain derived from Bowlin, which the careful reader should observe refers to "argument" rather
than "improper argument":

We think the only safe rule to be that this court should not hold an argument to be
reversible error unless it is in extreme cases where the language complained of is manifestly
improper, harmful and prejudicial, or where a mandatory provision of a statute is violated,
or some new and harmful fact injected into the case. (60)


The Court's discussion shows its focus was on the propriety of the argument - or at most, on the propriety
of the argument combined with its harmful effect - not, as later cases suggest, on the harmfulness of an
argument that has already been determined to be improper. 

 We also note the negative phrasing of the rule in Vineyard: The Court did not say an argument was
reversible error if one of the three conditions were met; it said the argument was not reversible error unless
one of the three conditions were met. Bowlin contained similar language: only extreme arguments would
result in reversal unless a statute were violated or new, prejudicial facts were injected. As phrased, the
three-fold refrain may have invoked conditions that were necessary, but not sufficient for reversal.

 The relevant wording of the three-fold refrain has mutated from "statute" in Bowlin, to "mandatory
provision of a statute" in Vineyard, to "mandatory statute" in later cases. Similarly, the focus of the refrain
has shifted through the years from error in Bowlin and Vineyard, to harmful error in Todd and later cases,
to incurable error in Cooks. Moreover, the "mandatory statute" portion of the refrain is and always has
been dicta. We are not aware of any decision reversing a case solely because the error involved a
violation of a "mandatory" statute without regard to whether the error had any influence upon the jury's
decision.

 Moreover, the idea that violation of a "mandatory statute" constitutes automatic reversible error
contradicts our developing harmless error jurisprudence. Almost twenty years ago, in Almanza v. State,
we decried a trend "to label certain errors 'fundamental' then automatically reverse convictions without
regard to the nature and harm of the error in the case." (61) In Cain v. State, we went further, holding that,
aside from federal constitutional errors labeled by the Supreme Court as structural, no error is immune from
a harm analysis. (62) Relying upon Cain, we have held that "violation of a mandatory statute does not, by
itself, call for the reversal of a conviction." (63)

 We also note that the three-fold refrain originated in cases decided before the formulation of the
current harmless error rule relating to nonconstitutional errors, (64) and in fact precedes the previous harmless
error rule for all errors. (65) We conclude that the "mandatory statute" part of the refrain has no place in our
current harmless error scheme. (66) 

2. Other prosecutorial arguments


 We must also disagree with the Court of Appeals's contention that the effect of the improper
argument before us was somehow magnified by the five other arguments to which the trial court sustained
an objection. 

 The first sustained objection was for an argument that referenced a package deal of twenty years
for three offenses. The pen packet does not show that there was plea agreement, but it does show that
appellant pled guilty and received concurrent sentences. Whether there was an agreement for these
sentences has no apparent relevance to the prosecutor's parole arguments. While one of the three
sentences was for five years rather than twenty years, the prosecutor's mistake in referring to three
concurrent twenty-year sentences, rather than two concurrent twenty-year sentences and a concurrent five
year sentence, is of no real significance. 

 The second sustained objection pertained to the prosecutor's comment that "back then the system
was a little different." When the trial court sustained the objection and asked how the system was different,
the prosecutor accurately responded that the range of punishment was five to twenty years, a range of
punishment that does not currently exist. That range of punishment is reflected in the judgments on those
prior offenses, and therefore, is not outside the record.

 The third sustained objection was an interrupted comment, "But the Parole Board decided," with
regard to appellant's prior twenty-year sentences. Even though there is no evidence of what the Parole
Board decided, there is evidence that appellant was released early on his sentences. A mere reference to
the Parole Board cannot be said to be significant, when the evidence about the early release was
admissible. 

 The fourth sustained objection was for a comment that appellant "bargained and got 5 years in
1981." That comment was accurate and supported by the record as to the five-year punishment but was,
perhaps, outside the record on the existence of a bargain. Again, the existence of an agreement was
inconsequential.

 The final sustained objection concerned the prosecutor's admonishment to the jury to reach a
verdict. That the prosecutor started to tell the jury that failure to reach the verdict would cause the case
to be tried again is not particularly prejudicial, if it is even improper, especially in light of the trial court's
instruction to disregard. (67) It is widely known that a hung jury will result in further proceedings. Even if the
jurors were not clear on whether the guilt proceedings would have to be repeated, the prosecutor's remark
was interrupted before that information was conveyed, and the trial court did instruct the jury to disregard
the remark. More to the point, there is no apparent connection between this type of remark and the
complained-of remark about parole.

 In summary, many of the points made in these five remarks were valid responses to opposing
counsel's arguments. (68) Even when the remarks strayed from what was proper, they were not particularly
egregious and, with the possible exception of the third comment, had no relevance to the complained-of
argument about parole.

3. Isolated vs. repeated


 We also disagree with the Court of Appeals's contention that the error was not isolated, but part
of a pattern. The lower court has misperceived both the nature of appellant's objection and the nature of
the arguments made by the prosecutor. Appellant objected that the argument was a "misstatement of law,"
not that it was an improper attempt to get the jury to apply parole law to appellant. The latter complaint
was procedurally defaulted by appellant's failure to raise it in an objection. (69) As for the former, the
complained-of argument was in fact the only misstatement of the law about parole made by the prosecutor. 
And it appears to have been an accident. The prosecutor correctly stated the law moments before the
complained-of argument and corrected his misstatement after the trial court pointed it out. 

 Even if a complaint had been preserved about improperly applying parole law to appellant, the
complained-of argument is also the only instance in which that occurs. The law specifically provides that
the jury may consider the existence of parole law and good time in making its punishment determination;
the jury is simply prohibited from considering how parole law and good time would be applied to a
particular defendant. (70) And the jury charge included an instruction to this effect as well as the other
portions of the good time and parole law instructions required by statute. It was not improper for the
prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to
ask the jury to take the existence of that law into account when assessing punishment. 

C. Curative measures


 We also disagree with the Court of Appeals's characterization of the instruction "the jury is so
instructed" as a "tepid" instruction of "limited curative effect." When counsel asks for a particular
instruction and the trial court accedes to the request by saying "the jury is so instructed," that instruction
will in most cases be considered effective to cure the harm from an improper argument. Moreover, the
Court of Appeals's statement that this was the only curative action taken by the trial court is factually
inaccurate. When the prosecutor asked what he had misstated, the trial court responded, "You said he
would be released back into the community. That is improper." So, the trial court actually gave an
additional admonition, pointing specifically to what the prosecutor said that was wrong. This admonition
does not somehow become meaningless because it was elicited by the prosecutor.

 Moreover, the prosecutor apologized and corrected himself after this additional admonition. The
Court of Appeals erred in failing to give any weight to the prosecutor's apology and retraction. Although
a prosecutor's self-corrective action might not carry the same weight as a trial court's instruction to
disregard, it is nevertheless a relevant consideration in determining harm and can, in the appropriate
circumstances, render an improper comment harmless. (71) And this is not a case in which the prosecutor's
retraction was the only curative action.

 Further, the Court of Appeals also erred in failing to consider the jury charge. The charge properly
instructed the jury on parole eligibility times and properly instructed the jury not to consider how good time
and parole law would be applied to appellant. 

 Finally, as with the first Mosley factor, the Court of Appeals's analysis of the second factor is
undermined by its misperception of the nature of appellant's objection. Appellant objected that the
prosecutor misstated the law. The misstatement was that appellant would be released after his flat time and
good time equaled one-fourth of his sentence. The defense objection that this was a misstatement was
sustained, the trial court instructed the jury to disregard it, and when the prosecutor asked what he had
misstated, the trial court specifically informed the prosecutor of the misstatement and that it was improper. 
Upon being informed of what he had misstated, the prosecutor apologized and corrected his misstatement. 
Under those circumstances, the jury surely understood that the prosecutor had misspoken, especially since
the prosecutor had made a correct statement of the law moments before and did so again in retracting the
misstatement. Moreover, the jury charge clearly and accurately set forth the law, which would have
disabused the jury of any notion that appellant would automatically be released at the time he became
eligible for parole.

 Even if, however, we considered the prosecutor's comment as an improper attempt to get the jury
to apply the law of good time and parole to appellant, we have found a more direct and egregious comment
to that effect to be cured by an instruction to disregard. (72)

D. Certainty of punishment assessed


 The Court of Appeals found that the punishment assessed was not certain absent the misconduct. 
In arriving at this conclusion, the lower court considered the nature of the offense (possession of a small
amount of contraband) and the amount of punishment imposed (eighteen years, two short of the maximum). 
But the Court of Appeals failed to consider appellant's numerous prior convictions: possession of
marijuana, selling marijuana, robbery by assault, escape, aggravated robbery, delivery of a simulated
controlled substance, and possession of a controlled substance. These offenses stretched from 1971 to
1998, and some were committed before the punishment on others had expired. Those prior convictions
are a much more likely reason for the lengthy sentence than a corrected misstatement of the law of parole.

 The Court of Appeals also did not consider the fact that appellant possessed a deadly weapon -
a firearm - during the present offense. And this weapon was loaded with hollow point bullets, which the
jury could believe were particularly dangerous.

E. Balancing the factors


 The error was isolated and not egregious. Curative action was taken by the court with two
immediate instructions, by the prosecutor with an apology and retraction, and in the jury charge with a
correct statement of the law and an admonition not to determine how good time and parole law would
apply to appellant. And appellant's possession of a deadly weapon in the present offense plus a string of
prior convictions handily explains the jury's eighteen year sentence in this case. Under the circumstances,
the trial court was reasonable in believing that its instruction to disregard was effective and that appellant
suffered no prejudice from prosecutor's improper remark. We conclude that the trial court did not abuse
its discretion in denying the request for a mistrial.

 The judgment of the Court of Appeals is reversed and the case is remanded for consideration of
appellant's remaining point of error.

 KELLER, Presiding Judge

Date delivered: May 19, 2004

Publish
1. Emphasis added.
2. Hawkins v. State, 99 S.W.3d 890, 901 (Tex. App.-Corpus Christi 2003).
3. Id.
4. Hawkins, 99 S.W.3d at 901 (quoting Cooks, 844 S.W.2d 697, 727 (Tex. Crim. App.
1992), cert. denied, 509 U.S. 927 (1993)).
5. Rule 44.2(b) articulates the harm analysis for non-constitutional errors: "Any other error,
defect, irregularity, or variance that does not affect substantial rights must be disregarded."
6. Hawkins, 99 S.W.3d at 901 (citing Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998), cert. denied, 526 U.S. 1070 (1999)).
7. Id. at 901-902.
8. Id. at 902.
9. Id. 
10. Id.
11. Id.
12. Id.
13. Id.
14. Id.
15. Id.
16. Id.
17. Id. at 903.
18. But see State ex. rel. Eidson v. Edwards, 793 S.W.2d 1, 6 (Tex. Crim. App. 1990)(due
process violation from prosecutor's failure to recuse himself could result in reversal even if trial court
lacks the power to force recusal).
19. Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).
20. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000); Simpson, 119 S.W.3d at 272.
21. Simpson, 119 S.W.3d at 272.
22. Martinez v. State, 17 S.W.3d 677, 693-694 (Tex. Crim. App. 2000).
23. Id. 
24. 983 S.W.2d at 259.
25. 17 S.W.3d at 693.
26. Cooks, 844 S.W.2d at 727.
27. 787 S.W.2d 53 (Tex. Crim. App. 1990).
28. 791 S.W.2d 84 (Tex. Crim. App. 1990), overruled on other grounds, Cook v. State, 884
S.W.2d 485 (Tex. Crim. App. 1994).
29. 787 S.W.2d at 54-55. 
30. Id. at 56-57.
31. Id., passim.
32. Id. at 57.
33. See id. at 57-58.
34. 791 S.W.2d at 89.
35. Id.
36. Id.
37. Id. ("Although the State's comment further strained an already tenuous connection between
the evidence as presented and an appropriate summation or deduction from that evidence [citations
omitted], it did not inject any new or harmful facts that were not cured by the court's instruction").
38. 844 S.W.2d at 728-729.
39. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S.
944 (2001); Allridge v. State, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988), cert. denied, 489 U.S.
1040 (1989); Todd v. State, 598 S.W.2d 286, 297 (Tex. Crim. App. 1980); Threadgill v. State,
124 Tex. Crim. 287, 294-295, 61 S.W.2d 821, 824 (1933); Vineyard v. State, 96 Tex. Crim. 401,
404, 257 S.W. 548, 550 (1923). 
40. 480 S.W.2d 624 (Tex. Crim. App. 1972).
41. 480 S.W.2d at 630 ("whether (1) the argument is manifestly improper, harmful and
prejudicial, (2) it is violative of a statute, or (3) it injects a new and harmful fact into the case").
42. Id. (citation omitted; emphasis added).
43. 29 S.W.3d at 115.
44. Id. at 115-116.
45. Id. at 116.
46. 598 S.W.2d at 297. See Wesbrook, 29 S.W.3d at 115 (citing Todd); Allridge, 762
S.W.2d at 155 (citing Todd).
47. 257 S.W. at 550. See Cooks, 844 S.W.2d at 727 (citing Borjan); Borjan, 787 S.W.2d at
57 (citing Vineyard); Todd, 598 S.W.2d at 297 (citing Thompson); Thompson, 480 S.W.2d at 630
(citing Vineyard).
48. 93 Tex. Crim. 452, 466, 248 S.W. 396, 404 (1922). See Vineyard, 257 S.W. at 550
(citing Bowlin).
49. Bowlin, 248 S.W. at 404.
50. Kinnamon, 791 S.W.2d at 89 (no reference to violation of mandatory statute as a source of
reversible error); Kerns v. State, 550 S.W.2d 91, 96 (Tex. Crim. App. 1977)(same); Stanchel v.
State, 89 Tex. Crim. 358, 361, 231 S.W. 120, 122 (1921)(same); Henderson v. State, 76 Tex.
Crim. 66, 68, 172 S.W. 793, 795 (1915)(same). See Cooks, 844 S.W.2d at 727 (citing Kinnamon);
Todd, 598 S.W.2d at 297 (citing Kerns); Vineyard, 257 S.W. at 550 (citing Stanchel and
Henderson). 
51. Bowlin, 248 S.W. at 403.
52. Id. at 404.
53. Id.
54. Branch's Ann. P.C., Vol. I, §370, p. 207 (1916).
55. Id.
56. 493 S.W.2d 230, 231-232 (Tex. Crim. App. 1973).
57. Id. (emphasis added). The actual wording in Branch differs slightly from the quotation in the
Bowlin opinion: "Before a reversal can be had on account of improper argument of State's counsel, it
must clearly appear that the remarks were improper and that they were of a material character and such
as under the circumstances were calculated to injuriously affect the rights of the defendant." Branch's
Ann. P.C., Vol. I, §361, p. 204.
58. Vineyard, 257 S.W. at 550. The opinion does not elaborate on whether this means the
objection was "overruled." Id.
59. Id.
60. Vineyard, 257 S.W. at 550 (citing Stanchel, Henderson, and Bowlin)(emphasis added).
61. 686 S.W.2d 157, 172-173 (Tex. Crim. App. 1985)
62. 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).
63. Ford v. State, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002). 
64. TEX. R. APP. P. 44.2(b), effective September 1, 1997.
65. Former TEX. R. APP. P. 81(b)(2), effective September 1, 1986.
66. See Taylor v. State, 109 S.W.3d 443, 451 (Tex. Crim. App. 2003)(pre-rules cases no
longer controlling for nonconstitutional errors under the new rules).
67. Brown v. State, 692 S.W.2d 497, 502 (Tex. Crim. App. 1985).
68. See Martinez, 17 S.W.3d at 693 (mildly improper comment not harmful where the main
point of the comment was a valid one).
69. TEX. R. APP. P. 33.1(a)(1)(A)(objection must state grounds for ruling with sufficient
specificity to make trial court aware of the complaint).
70. TEX. CODE CRIM. PROC., Art. 37.07 §4(c).
71. See Canales v. State, 98 S.W.3d 690, 695-696 (Tex. Crim. App. 2003).
72. Brown v. State, 769 S.W.2d 565, 567 (Tex. Crim. App. 1989).